[PHILADELPHIA, JANUARY 8, 1833.]

## M'CRELISH *against* CHURCHMAN and Another, assignees of PRAY.

### IN ERROR.

UNDER the plea of payment to a *scire facias*, on a mortgage, with notice of special matter, if the defendant intend to insist on fraud in fact, it is not sufficient to allege in the notice of special matter, facts from which an inference of moral fraud may be drawn. The alleged fraud should be charged in the notice.

Covenants are to be construed dependent or independent of each other, according to the intention of the parties, and the good sense of the case; and technical words should give way to such intention.

A. being indebted to B. in the sum of five thousand one hundred and seventy dollars and forty cents, for tallow, for which he had given eight promissory notes of different dates, for different sums, payable at different times, gave to B. his bond for five thousand dollars, payable in one year from its date, accompanied by a mortgage on his real estate, and paid him the balance of the debt, one hundred and seventy dollars and forty cents, in cash. On the same day, an agreement in writing was entered into between the parties, by which it was stipulated that B. should pay off and take up all the notes as they became due, and deliver them to A. The agreement contained a covenant on the part of B. to indemnify A. against all claims and demands arising on the notes. The notes all came to maturity before the bond was payable. B. without having taken up any of the notes, which were all protested as they became due, and remained in the possession of different holders at the time of the trial, issued a *scire facias*, on the mortgage : *Held,* that the bond, mortgage and agreement, constituted one instrument, and that no recovery could be had on the mortgage.

How far time is of the essence of a contract, and where non-compliance with an agreement at the time stipulated, will be relieved against, and where not.

WRIT of error to the District Court for the city and county of *Philadelphia,* in a *scire facias* on a mortgage given by *Archibald M'Crelish,* the plaintiff in error and defendant below, to *John Pray,* whose assignees were the defendants in error and plaintiffs below, dated the 31st *August,* 1822, to secure a bond, with a warrant of attorney, of that date, for the payment of five thousand dollars, in one year, with interest.— *M'Crelish* and *Pray,* had dealings with each other, and *M'Crelish* became indebted to *Pray* in the sum of five thousand one hundred and seventy dollars and forty cents, for tallow, delivered to him by *Pray,* for which he gave him eight promissory notes, of various dates and

(M'Crelish *v.* Churchman and Another.)

various amounts.   These notes being drawn in favour of *Pray*, were indorsed by him, and discounted by different banks, and by others.   On the 31st of *August*, 1822, *M'Crelish* gave *Pray* the bond and mortgage, on which suit was brought, for five thousand dollars, payable in one year, with interest, and at the same time, *M'Crelish* paid to *Pray*, the balance of one hundred and seventy dollars.   The parties on the same day, entered into the following agreement:—

" Whereas, *Archibald M'Crelish*, of the city of *Philadelphia*, tallow chandler, has this day executed to the subscriber, a mortgage, bond and warrant of attorney, conditioned for the payment of five thousand dollars, in one year from the date thereof, with lawful interest; and whereas, the said mortgage and bond were given to secure the payment of sundry promissory notes, drawn by the said *Archichald M'Crelish*, in favour of the subscriber, as follows:—

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| One note dated, | *July* | 15, 1822, at | 60 | days, for | $750 | 00 |
| One | " | " | 22, | " | 60 | " | 750 | 00 |
| One | " | *August* | 2, | " | 90 | " | 500 | 00 |
| One | " | " | 3, | " | 60 | " | 870 | 46 |
| One | " | " | 13, | " | 60 | " | 400 | 00 |
| One | " | " | 28, | " | 60 | " | 400 | 00 |
| One | " | " | 29, | " | 60 | " | 600 | 00 |
| One | " | " | 30, | " | 20 | " | 900 | 00 |

All of which are endorsed by the subscriber, and have either been discounted in bank, or negotiated:   Now, know all men by these presents, that I, *John Pray*, in consideration of the said mortgage and bond, do for myself, my executors and administrators, warrant and agree to, and with, the said *Archibald M'Crelish*, his executors and administrators, to pay off and take up all the said notes, as they become due, and to deliver the same to the said *Archibald*, his executors, or administrators, and further to indemnify the said *Archibald*, his executors or administrators, from all claims and demands whatsoever, which may be made by any person or persons for the payment of the said notes, or any of them, or any part thereof, hereby agreeing fully and absolutely to indemnify and discharge the said *Archibald*, his executors and administrators, from all claims and demands arising on the said notes.   The said *Archibald* is to pay the sum of one hundred and seventy dollars and forty cents, being the difference of the amount of the said mortgage and bond and the said notes.   In witness, &c. 31st of *August*, 1822.

*John Pray*, [L.S.]

The property mortgaged, was proved to be worth about six thousand dollars, and was incumbered with two prior mortgages, amounting to two thousand six hundred dollars.

On the 18th of *September*, 1822, the first of the above mentioned notes, for the payment of seven hundred and fifty dollars, fell due, but *Pray*, being unable to take it up, it was protested by the *Mechanics' Bank*, who held it.   The nine hundred dollars were to become due on

the 22d *September*, 1822.   On the 21st of *September*, 1822, *Pray* was compelled to make an assignment to the plaintiffs, *Caleb Churchman* and *Anthony Taylor*, of all his estate, to pay his creditors.   The assignment contained the following clause : " And provided further, and it is hereby expressly declared and agreed, that a certain bond, conditioned for the payment of five thousand dollars and mortgage, bearing date on the 31st of *August*, 1822, for securing the payment thereof, given and executed by *Archibald M'Crelish*, to the said *John Pray*, and all the moneys which shall be recovered and received by, and from the same bond and mortgage, shall be, and they are hereby specially and exclusively appropriated and appointed to and for the payment and discharge of the following notes, drawn by the said *Archibald M'Crelish*, and indorsed by the said *John Pray*, the said bond and mortgage having in fact been executed and given to secure the payment of the said notes; that is to say." (Here the notes above mentioned were enumerated.)

All the notes remained unpaid, and in the hands of the banks, and others, and were duly protested, and with their protests were given in evidence on the trial, having been produced by the holders who claimed the fund under the assignment.

On the 11th of *November*, 1822, the defendant, *M'Crelish*, assigned all his estate to *Jeremiah Boone*, and others, in trust, to pay certain of his preferred creditors in the first instance, and not the note holders.

The defendant, under the plea of payment, gave notice, that he would give in evidence the above mentioned agreement, by *Pray*, and also, that it was understood and agreed by the parties, that *Pray* was to take up the notes specified in the agreement, as they became due, in order to enable *M'Crelish* to go on with his business; that in consequence of *Pray's* default in taking up the notes, they were protested, suits instituted against *M'Crelish*, on some of the notes, his credit destroyed, and finally, on the 10th of *November*, 1822, he was compelled to make an assignment to *Boone* and others, in trust for his creditors.   The defendant on the trial gave no evidence of any agreement, besides the one in writing above mentioned, nor any evidence to support his notice, except the record of a suit in the District Court by the *Bank of the United States*, against *M'Crelish*, to December Term, 1822, *No.* 169, on the note for seven hundred and fifty dollars, dated the 22d of *July*, 1822, at sixty days, on which judgment was entered at the *April* Term, 1825.

The defendant, propounded several questions to the court, the answers to which were assigned for error.

The court was requested to charge the jury :—

1. That unless *Pray* complied with his agreement, as specified in the paper of the 31st of *August*, 1822, the plaintiffs cannot recover.

To which the court answered :—

I consider the payment of these notes but part of the consideration

(M'Crelish *v.* Churchman and Another.)

and when part of a consideration fails and part does not fail, the mortgage is not entirely void. In consequence of his not complying with his covenant to take up the notes, it would not defeat the action altogether, but whatever damages *M'Crelish* has sustained, should be deducted.

2. That the argreement of *Pray* to take up the notes as they became due, and deliver them to *M'Crelish*, being the consideration of the mortgage, he was bound to take them up and deliver them, and unless he has done so, the plaintiffs cannot recover.

Answer of the court. The taking up the notes was not altogether the consideration of the mortgage, and *Pray's* failure to do so, does not defeat the action altogether.

3. That in order to enable the plaintiffs to recover in this action, they are bound to shew they have paid and taken up the notes.

Answer of the court. This question is answered by the preceding remark.

4. That if the jury believe *John Pray* concealed his inability to comply with his agreement, to pay said notes at maturity, and thereby induced *M'Crelish* to give the mortgage, the plaintiffs cannot recover.

Answer of the court. If notice of special matter to this effect had been given, and evidence in support of it, I should be of opinion, that the plaintiffs could not recover. But as the defendant gave the mortgage as a fund to raise money to pay the notes, the mere inability to pay or raise the money, could not be evidence of fraudulent concealment. I however think that the point could not fairly arise, under the notice of special matter.

*Broom* and *Binney* for the plaintiff in error.—The bond, the mortgage and the agreement, by which *Pray* stipulated to take up the notes of *M'Crelish*, bearing the same date, executed at the same time and relating to the same subject-matter, constitute one instrument. They provide, that as the notes shall become due, they shall be taken up by *Pray* and delivered to *M'Crelish*. The object of the arrangement was, not to enable *Pray* to raise money by means of the mortgage, for the purpose of paying the notes, but that he should pay them out of his own funds, and be ultimately secured by the mortgage. The mortgaged premises could not have been looked to as the source from which payment was to be made, for the notes were to be taken up as they became due, and the last of them was to become due before the 1st of *November*, 1822, while the bond was not to become due until one year from the 31st of *August*, 1822, and no procedure could be had upon the mortgage until the expiration of a year and a day from that period. The fund, therefore, could not be realized until after the notes were payable. If the object had been to raise money on the property, there would have been no occasion to make *Pray* part of the machinery of the arrangement. The money could have been raised without his intervention, and would have passed immediately into the hands of *M'Crelish;* nor was he under

(M'Crelish *v.* Churchman and Another.)

any obligation arising from his debt for tallow, which was the conside-
ration of the notes, to secure *Pray* by a bond and mortgage. The
object of *M'Crelish* in giving those securities, was to preserve his
credit, by providing against the dishonour of his notes. In no other
manner could he derive any benefit from the arrangement. *M'Cre-
lish*, at the time the bond and mortgage were given, owed *Pray*
nothing. The notes had been passed away, were in the hands
of various holders, and had not become due. *M'Crelish*, therefore,
could gain nothing by giving a security merely to *Pray*, and he was
under no obligation to do so. The introduction of the note holders
or the assignees of *Pray*, does not alter the case, as they derive title
through him, and have no other rights than his. The true construc-
tion of the agreement then is, that the notes were to be taken up as
they, from time to time, became due, in order to save the credit of
*M'Crelish*, and enable him to go on with his business. To go back
to the original consideration of the notes, and insist that it was the
duty of *M'Crelish* to give the mortgage to secure the debt for tallow,
is an error. There was no reason why this debt should be preferred.
The punctual payment of the notes alone could have led him to the
arrangement, and the failure on the part of *Pray* to perform the con-
dition on which the mortgage was given, was in its consequences,
ruinous to him. It was not an injury which could be made up in
damages. Time, therefore, was of the essence of the contract, and
did not admit of compensation. Wherever time is material, the act
stipulated to be performed, must be performed within the time pre-
scribed, or the contract is vacated, *Bennett* v. *Lynch*, 1 *John. Ch. R.*
370. Here nothing was done by *Pray* in fulfilment of his part of the
contract. Not a note has been taken up either by him or his
assignees; on the contrary, the *Bank of the United States*, the holders
of one of them, have proceeded to judgment on it, and thus bound up all
*M'Crelish's* other property. Not a step has been taken to entitle
*Pray* to come into a court of equity, and ask a specific performance
of the agreement. Equity would not permit him to enforce the mort-
gage, leaving it entirely uncertain whether *M'Crelish* will ever de-
rive any advantage from it. If he is bound to do anything to entitle
himself to the benefit of the mortgage, equity will never decree spe-
cific performance, unless he does what he is bound to do. 1 *John. Ch.
R.* 282.

Instead of charging the jury that the failure of *Pray* to take up
the notes as they became due, was a forfeiture of his right to avail
himself of the mortgage, the court below refused even to submit the
question of time to the jury, instructing them that the payment of
the notes was only part of the consideration of the mortgage, and that
the injury sustained by *M'Crelish*, in consequence of their non-pay-
ment, might be compensated by damages. This was clearly not a
case of divided consideration and part performance. *M'Crelish* was
to get nothing but the punctual payment of his notes. This was the
single, undivided consideration. No one can be insensible of the im-

(M'Crelish *v.* Churchman and Another.)

portance it is to a trader to have his notes punctually taken up.  If a single one remains unpaid, his credit is gone ; he is ruined, and it is impossible to estimate the damage.  If they are paid immediately after they become due, the evil is not cured, and the dishonour of one is as disastrous in its consequences, as that of twenty.  Where the breach of an agreement, at the prescribed time, frustrates all the designs of the party, time is of the essence of the contract and admits of no compensation.  If the notes had been lying over when the mortgage was given, the case might have presented a different aspect ; but as it was, to leave a single note unpaid at maturity, destroyed the whole arrangement.  In what situation is *M'Crelish* placed, if *Pray,* or his assignees can recover, in the present state of things ?  His estate is taken from him, and his notes are still outstanding, and he may be sued on all of them, as he has already been on one.  If the note holders have any existence in the cause, their conduct has destroyed their claim.  How can they ask for the benefit of this security, when they have permitted *M'Crelish* to be dishonoured—and one of them has actually proceeded to judgment against him ?  But the security was evidently not intended to enure to the benefit of the note holders.— The bond could not be rendered available, until the expiration of nearly a year, and the mortgage not until a year and a day after the bond became due, and in the mean time, the notes were to be taken up by *Pray.*  The note holders had nothing to do with the security. It was given for the ultimate security of *Pray,* who was to pay them out of his own funds.  They cited *Mackey* v. *Brownfield* 13 *Serg. & Rawle,* 239.  *Bennett* v. *Lynch,* 1 *John. Ch. R.* 370.  1 *Fonb. Eq.* 436, *b.* 1, *c.* 6, *s.* 14.  *Montague* v. *Tidcombe* 2 *Vern.* 5, 19.  *Lawrence* v. *Blackford,* 2 *Vern.* 457. *Thompson* v. *M'Clenachan,* 17 *Serg. & Rawle,* 115. *Pordage* v. *Cole,* 1 *Saund.* 320. *n.* 4.  *Gainsford* v. *Griffith,* 1 *Saund.* 60.  1 *Russell,* 377, 1 *Simon & Stuart,* 590.

Admitting that by the true construction of the agreement, *Pray* was not bound to take up the notes as they fell due, to save the credit of *M'Crelish,* there, nevertheless, could be no recovery upon the mortgage while the notes were outstanding.  There is nothing to prevent suits from being instituted upon them, or an execution from being issued upon the judgment already obtained on one of them. The want of equity in attempting to recover upon the mortgage, without taking a single step towards a compliance with any of the conditions on which it was given, is too palpable to be countenanced If this court separate the condition from the bond itself, the consequences will be frightful ; *M'Crelish* loses his property and may nevertheless be compelled to pay the notes.  If by a future surrender of the notes, a release of the judgment and indemnity for the injury sustained, full justice can be done under the contract, it must be on another trial, and of course, this judgment must be reversed.

If when *Pray* received the mortgage, he intended not to pay the notes, he perpetrated a gross fraud, and of course, there can be no recovery on an instrument thus obtained.  It was of the utmost con-

sequence, therefore, to *M'Crelish*, to shew that when the mortgage was given, *Pray* either misrepresented or concealed his situation, and for this purpose it was necessary to shew what his actual situation was; but the court below refused to charge the jury on this point, as the defendant's counsel requested, on the ground that under the notice of special matter given in the cause, such a defence could not be set up. This defence had nothing to do with the notice of special matter. The defendant had a right to any inference he could draw to the jury, from the evidence before them. The object of such a notice is not to cripple and restrain the effect of evidence already given, but to prevent the introduction, by surprise, of evidence, which the plaintiff is not prepared to rebut. The defendant had a right to shew from the evidence, that *Pray*, by concealment, trick, or fraud, had induced *M'Crelish* to enter into the arrangement. The law is well settled that if the court charge in such a manner as to deprive a party of the benefit of such a charge as ought to have been given, it is error ; and this was done by the court below in the present instance.

*T. Sergeant* and *Chauncey* for the defendants in error.—One fact lies at the foundation of this case, which must have a material influence on its decision. The notes to secure the payment of which the mortgage was executed, were given for the *bona fide* debt of *M'Crelish*, who being largely indebted to *Pray* for tallow, gave his notes for five thousand dollars, and paid the residue in cash. These notes *Pray* had discounted, and to secure the ultimate payment of them, the mortgage was given. It was nothing more then, than the ordinary case of a debtor giving a security for his own debt, or rather providing a fund out of which it should be paid. The mortgaged premises were proved on the trial to be worth but six thousand dollars, and were subject to two other mortgages, amounting to two thousand six hundred dollars, so that the fund was insufficient for the purpose for which it was designed. The mortgage was, from its nature, assignable, and *Pray* having assigned it for the purpose of raising a fund for the payment of the notes, the plaintiffs below, who are his assignees, come into court upon the mortgage, in order to apply the proceeds to the purpose for which it was assigned. The action, therefore, is for the benefit of the note-holders, who are the real plaintiffs, and the court will consider the real parties as well as the equity of the case. If, as is contended on the other side, the agreement controls the mortgage, it does not follow that the mortgage is vacated, if the notes have not been taken up at the day mentioned in the agreement. The agreement consisted of three parts. 1st.— An acknowledgment by the mortgagee, accepted by the mortgagor, that the mortgage was given to secure the payment of the notes. 2d. —A covenent on the part of the mortgagee, that he would take up the notes as they became due, and deliver them to the mortgagor. 3d.—A covenant to indemnify the mortgagor against all claims found-

(M'Crelish *v.* Churchman and Another.)

ed upon the notes. The leading consideration of the whole arrangement, was to provide a fund for the note-holders. All the others were subordinate to it. Indemnity to *M'Crelish* was not, as the opposite argument supposes, the leading consideration. Properly speaking, it was not any part of the consideration, but rather an independent, personal covenant, not on technical, but substantial grounds. Personal indemnity is sometimes better than real security, and *M'Crelish* might have preferred it, but if it fails, it does not give him the right to take back the mortgage, unless there is an express stipulation to that effect, which was not the case. The agreement was not a defeasance of the mortgage, nor is there a word in it which goes to invalidate it, if the notes should not be taken up as they become due. The covenant of indemnity, negatives such an idea. To consider the mortgage as vacated in the event of the notes remaining unpaid, is to defeat the very object for which it was given. If *M'Crelish* had paid the notes himself, it would have been a different matter ; but no court has ever declared a contract like this void in consequence of the failure of a collateral covenant. To argue that there can be no recovery of the fund provided for the payment of the notes, until the notes have been paid, is to require an impossibility. The very object in putting the mortgage in suit, is to obtain the means of carrying the arrangement into effect. It cannot be done except through the medium of the mortgage, yet the defence would take from the plaintiffs below, the only means by which the agreement can be executed. The same answer may be given to the position taken on the opposite side, that supposing it was not necessary under the agreement, that the notes should be taken up as they became due, they must at all events be paid and surrendered before the institution of a suit upon the mortgage. If the plaintiffs had received the fund, the notes would have been paid and surrendered, but without the fund provided for their payment, how can they pay them ? The fund is required for the payment of the notes, and of course they cannot be tendered until the fund is rendered available. If, however, *M'Crelish* has any equitable claim to receive the notes before judgment is obtained on the mortgage, that obstacle may easily be removed. The plaintiffs are now ready to surrender the notes on obtaining judgment on the mortgage. Where there is a legal objection, it must be removed before the institution of a suit ; where it is an equitable one, it may be removed at any time, even during the trial. This is a well settled distinction.

As for the delay of the payment of the notes beyond the time prescribed in the agreement, it forms no objection to the plaintiff's recovery. Time can almost always be compensated. This has become almost an universal rule, and the contrary is the exception. No court of equity ever inflicted a forfeiture for non-compliance at the day. *Decamp* v. *Feay,* 5 *Serg. & Rawle,* 323. *Bellas* v. *Hays, 1d.* 427. The defence is not that the debt intended to be secured, is not honestly due, or that it has been satisfied, and in a court of equity a

defence cannot be set up, except upon some such ground. The defence is merely that the creditor did not take up the notes at maturity, without any attempt to shew that the debtor sustained any damage, or even suffered any inconvenience from the want of a strict compliance with the agreement. If *M'Crelish* had suffered damage, he might have sued upon the covenant, even before the mortgage became due, and he may now sue if he thinks he is injured. There was no failure of the consideration of the mortgage, for it was given to secure the payment of a debt, and the debt has not been paid. If it had been paid by *M'Crelish,* the consideration would have failed. · In equity, the rule for the construction of covenants, is the same as at law. There is no difference in the manner in which they are treated. The meaning of the parties at the time the covenant was entered into, must govern, and this meaning can only be collected from the language they have used. But here the court is called upon to say what the parties have not said, and make the covenants mutual and dependant, though the language of the parties is opposed to it.

The notice of special matter, was no indication of the defendant's intention to prove what he afterwards alleged, and he has no reason to complain of the court below, for saying that the defence attempted to be set up, did not arise upon the notice given. He was not deprived of the benefit of any evidence of which notice was given; no fraud was alleged in the notice, or attempted to be proved on the trial. All the facts stated in the notice, were given in evidence, so far as they could be proved, and thus the defendant had the full benefit of his notice. His error was in attempting to set up a defence which his notice did not cover.

Rogers, J. (after stating the case) delivered the opinion of the court, as follows:—

We agree fully with the court, that this case must be taken divested of all considerations arising from the allegation of fraud. The inability to pay the notes, as they became due, was not evidence of fraud, nor, on the other hand, was fraud fairly inferable from proof of the fact, that at the time the mortgage was executed the property was previously encumbered to an amount which reduced the value of the security below five thousand dollars. The parties must be supposed to have entered into the contract with a knowledge of all the circumstances, and if they intended to insist on fraud, some evidence should have been given other than the written testimony which was submitted to the jury. If the defendant intended to insist on fraud in fact, it should have been charged in his notice of special matter, otherwise the plaintiff might be taken by surprise. It is not sufficient to allege facts, from which an inference of moral fraud may be drawn, as has been heretofore decided by the court. The object of special notice is to put the plaintiff on his guard, that his attention may be drawn to the defence, on which the defendant relies. There is nothing in this notice by which the plaintiff could be

(M'Crelish *v.* Churchman and Another.)

apprised that the defendant intended to charge him with fraud. We think with the District Court, that the defendant's point could not fairly arise under the notice of special matter. This, however, is a minor defect, which might be easily remedied on another trial.

The only difficulty arises in the charge of the court, on the three first propositions of the defendant's counsel, all of which may be properly considered under one head.

I cannot say that I exactly comprehend the meaning of the court, when they declare, that they consider the payment of the notes but part of the consideration. This is not explained in the charge, and we have to regret that we have not a more full report on this head, as this appears to be made the hinge upon which the whole cause turns. If this had been the case, when part of the considerations failed and part did not fail, the mortgage would not be void. When a covenant goes only to *part* of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and action may be maintained for a breach of the covenant on the part of the defendant, without averring performance in the declaration. 1 *Saund.* 320, *note* 4.

The bond, and mortgage, and agreement, being executed at the same time, and in reference to the same subject-matter, must be taken as one covenant. 2 *Vern.* 459, and 17 *Sergeant & Rawle,* 115. To discover the intention of the parties concerned, is the chief object, and in effecting this we have not to encounter any technical difficulties. For covenants, &c. are to be construed to be either dependent or independent, of each other, according to the intention and meaning of the parties and the good sense of the case; and technical words should give way to such intention. 1 *Saund.* 320, *note* 4. On the 31*st August*, 1822, the time the agreement was made, *M'Crelish* was indebted to *Pray*, five thousand one hundred and seventy dollars, for which he had given him his notes, of different dates, different amounts, and payable at different times. It was a business transaction; the ordinary case of debtor and creditor. *M'Crelish* was under no obligation, legal or moral, to give additional security for payment of the money due. We are then to seek for the motive which induced *M'Crelish* to give *Pray*, or if you please, *the holders of the notes,* such security for the money; and this reason, which forms the consideration of the contract, is given in the agreement itself. *M'Crelish* agrees to give to *Pray* the mortgage and bond in question, and the sum of one hundred and seventy dollars and forty cents, in consideration whereof *Pray* stipulates that he will pay off and take up all the notes, as they become due, and deliver the same to *M'Crelish.* It is not denied that *M'Crelish* performed all his part of the contract to the letter; that is, he gave his bond and mortgage, and paid the money, according to contract. The plaintiff sues out a *scire facias* on the mortgage, which is in substance calling on the defendant to shew cause why the property should not be sold for payment of the notes, which it was intended to secure, and the

(M'Crelish *v.* Churchman and Another.)

single question will be, whether the plaintiff has performed his part of the contract. Are the covenants, in the agreement, conditions, and dependent, in which the performance of one depends on the prior performance of the other, and therefore, till the prior condition be performed, the other party is not liable to an action on his covenant? *Kingston* v. *Preston,* referred to in 2 *Doug.* 689. Or are they mutual and independent, where either party may recover damages from the other, for the injury he may have received by a breach of the covenants in his favour, and where it is no excuse for the defendant to allege a breach of the covenants on the part of the plaintiff? That no particular words are required to create either a covenant or a condition, is perfectly clear; and it is also immaterial in point of construction, whether the clause be placed in the instrument prior or posterior to others. There are indeed some words, on which conditions precedent usually arise, such as, for instance, *ita quod, sub conditione, quod si contingat. Lock* v. *Wright,* 1 *Str.* 569.—S. C. 8 *Mod.* 40. *Peeters* v. *Opie,* 2 *Saund,* 350. *Co. Lit.* 204 *a,* 203 *c,* 2 *L. Ray.* 766. *Com. Dig. title, Condition.* And in some instances the words shall be construed to be both a covenant and a condition; as if one leases for years by indenture, provided always, and it is covenanted and agreed, that the lessee shall not alien. This is a condition by force of the provision, and a covenant by force of the other words; *Co. Lit.* 203, *b.* 2 *Mod.* 74. 2 *Co.* 72, *a. Cromwell's case. Cro. E.* 242, *Simpson* v. *Tetterell.* But the courts at the present day disregard technicalities, and notice such words so far only as they disclose, and are evidence of the intention of the contracting parties. *Platt on Covenants,* 72. It is said, that this is a suit brought by the assignees of *Pray,* under the special clause in his assignment for the benefit of the holders of the notes. It may be safely admitted, that they stand in the place of *Pray,* but surely no person can contend, that they are in a better situation. Whether the parties to the agreement were particularly anxious about the security of the holders of the notes, admits of doubt. *Pray* had an eye to his eventual liability, in case the drawer should be unable to take up the notes at maturity. This was his motive; but be this as it may, the court would give the language of the agreement an extended signification, so as to embrace the holders of the notes, and give them the advantage of the security. I am willing to allow the plaintiffs the benefit of the position, that the parties are substantially the holders of the notes. It is in truth a contest for the fund, between different classes of creditors, and in this view equally meritorious in the eye of the court. Still the question recurs, what is the meaning of that part of the contract, in which *Pray* agrees to pay off and take up all the said notes as they become due, and deliver the same to *M'Crelish.* It is not pretended that *Pray,* or any other person, paid the notes as they became due. On the contrary, the notes were regularly protested for non-payment, and on one of them suit was brought and prosecuted to judgment. It is not alleged that the notes were delivered to *M'Crelish,* nor was

(M'Crelish *v.* Churchman and Another.)

there an offer to deliver them, until the time of trial. It is, however, said, that the mortgage, &c. were given to raise money for the purpose of paying the notes as they became due, and that the failure in payment arose from a deficiency in the value of the property. But this is said without any evidence whatever, and in opposition to the common sense of the transaction. I can perceive no motive which could induce *M'Crelish* to make such an arrangement. If the intention was to raise money on the mortgage, so as to meet the notes when they became due, this could have been as well effected, for any thing that we know, by *M'Crelish* as by *Pray*, and that without the risk to which he must be exposed by placing in the hands of *Pray* the whole amount raised on the mortgage, which *Pray* might, or might not, faithfully apply to the objects of the trust. They could not have looked to a sale of the property, as that could not be done under the mortgage, until after all the notes became due. Besides, if such was the intention, as has been contended, it does not appear that any effort was made to raise money on the security of the mortgage. If we understand this agreement as providing *Pray* with a real security, and as securing to *M'Crelish* the punctual payment as they became due, we have considerations presented sufficiently powerful to account for the arrangement. *M'Crelish's* credit depended on the payment of the notes at the day. The dishonour of the bills necessarily destroyed his credit. And so certain was this effect produced, that *M'Crelish* shortly after assigned for the benefit of his creditors. To prevent this, was the principal reason for entering into the contract. But, it is said, that in equity, time is not material, and in general it is not. But when it is the obvious intent to make time material, equity will not relieve, and that is the case here. The injury arising from a non-payment at the day, of these negotiable securities, it may be difficult to estimate, nay, in some instances, impossible. In a mercantile community, punctuality is of the utmost importance, and the covenant might be viewed in relation to the subject-matter, and under all the circumstances attendant upon it. Although the agreement contains a stipulation for an indemnity, this was intended to give a remedy, when the injury was of such a nature as to require a larger compensation in damages than the amount of the value of the notes. The clause may also be relied on to shew the importance which *M'Crelish* attached to a punctual performance of the contract at the day. It must be borne in mind, that no one of the notes was ever paid, and whether if such a payment had been made, it would have been in part performance of the contract, it is unnecessary to decide. Although it has been intimated, in some of the cases, that time could not be made of the essence of the contract, even by a positive stipulation of the parties, there has been no decision to that effect; but in other, and in later cases, it has been admitted that parties may make time of the essence of the agreement, and whether they have done so must depend on all the circumstances. 1 *Russel,* 377. 1 *Simon & Stuart,* 590. In *Benedict*

*& Lynch,* Chancellor KENT, with his usually perspicuity, reviews all the cases in this branch of equity. He adopts the opinion of Lord LOUGHBOROUGH in *Lloyd* v. *Collit,* 4 *Bro.* 469, who observes, that there is nothing of more importance, than that the ordinary contracts between man and man, which are so necessary in their intercourse with each other, should be certain and fixed, and that it should be certainly known, when a man is bound and when not. There is a difficulty to comprehend how the essentials of a contract should be different in equity and at law. It is one thing to say that time is so essential, that in no case in which the day has by any means been suffered to elapse, the court would relieve against it and decree performance; the conduct of the parties, inevitable accidents, &c. might induce the court to relieve. But it is a different thing to say, the appointment of a day is to have no effect at all, and that it is not in the power of the parties to contract, that if the agreement is not executed at a particular time, they shall be at liberty to rescind. This is not, it is true, the case of an express stipulation to rescind the contract, provided the notes were not taken up and delivered at the day, yet there is no mistaking the intention of the parties to provide for the faithful, literal, and punctual compliance with the contract. It was an object of the greatest importance to *M'Crelish* to preserve his credit, which could only be done by preventing the dishonour of his bills. Had the notes been paid at the day, but not delivered, that would have been a case of a part performance, and the failure to deliver the bills might have been compensated in damages. But not so where there has been an entire failure on the part of the plaintiffs. The principle seems to be firmly established, that time may be a circumstance of decisive importance, but that it may be waived by the conduct of either party; that it is incumbent on the plaintiff, whether at law or in equity, to shew that he has used due diligence in the performance of his part of the contract, or that if he has not, his negligence arose from some just cause, or has been acquiesced in; that it is not necessary for the defendant to shew any particular inconvenience; it is sufficient if he has not acquiesced in the negligence of the plaintiff. It is not pretended that the plaintiffs performed their part of the contract at the time, nor has it been shewn that the negligence arose from any just cause, or that it has been acquiesced in by the defendant. They seek every benefit from the contract, without any thing being done on their part from which *M'Crelish* could receive the slightest possible advantage. His notes have been dishonoured, and he has been compelled to assign his property for the benefit of his creditors.

Judgment reversed, and a *venire facias de novo* awarded.