The opinion of the Court was delivered by
Biormudez, C. J.
The plaintiff complains that in 1879, she was represented as dead to the Second District Court for the Parish of Orleans. That she is the woman named Rachel in the will of one Cruden, and is the legatee of the real estate therein mentioned; that proceedings were instituted by the defendants to settle her succession; that they obtained a decree recognizing them as her sole heirs, and putting them in possession of that property.
She charges the nullity of those proceedings, and prays that the same he pronounced.
The defenses are, by exception, that the petition does not disclose the name and surname of the plaintiff ■, that she has no cause for action, because she has no rights as the alleged legatee, she being at the time a slave, incapable of inheriting.
The first exception having been overruled, and the second referred’ to the merits, the defendants, reserving the same, pleaded them anew in the answer, setting up a general denial of all the allegations, and a special denegation that the plaintiff is the same person as is mentioned in the will.
The case was tried on those issues. From a judgment in favor of the plaintiff, the defendants have appealed.
*110 The first exception was properly overruled. The law does not require impossibilities. It is only from such parties as have a name and a surname, that it demands a specification of both. In the present case, the plaintiff calls herself Rachel; she says that she is the Rachel named in the will to which she refers; the Rachel, whose heirs the defendants claim to be. She has but one name, and a name brought particularly to the knowledge of the defendants with such precision that they can not pretend not to know who the plaintiff claims to be. The object of the law in requiring the giving of the name and surname, is to well inform the adverse party with certainty, of who the lilaintiff is, in order to avoid all possible mistake.
The defendants cannot set up any ignorance on that subject in this ease.
The facts indisputably disclosed by the Record are, that by his will dated .1837, John Cruden ordered that one of his slaves named Rachel, born in 1833, be emancipated at her majority; bequeathing to her a lot of ground, therein described; that some twenty years afterwards, Rachel went out of the State, remaining unheard of; that in April, 1879, the defendants, representing her as having departed this life, and claiming to be her sole heirs, were recognized and put in possession, as such, by the said court of the lot in question ; that in 3Iay of the following year the plaintiff brought the present action.
The question submitted is simply one of identity.
The girl, Rachel, named in the will, as born in 1833, could unquestionably be presumed to be still alive (one hundred years not having elapsed since her birth), R. C. C. 70, were, it not for the proceedings had in the Probate Court, which appear to be regular on their face.
The judgment recognizing the petitioners, who are the defendants herein,- as the collateral and only heirs of Rachel, seems to be supported by evidence showing the alleged death of Rachel and the right of heirship claimed; but it was rendered necessarily ex parte, and is not absolutely binding.
Tf it be true, that the plaintiff is the person represented as dead and her identity is established, those proceedings must fall as the offspring of either fraud or ignorance. 29 A. 560; 4 R. 26, 201; 14 A. 596.
Until then, however, they prima facie establish the death of Rachel, sufficiently to remove the presumption in favor of her existence. The burden was upon plaintiff to show her identity. 32 A. 425. ■
It indeed appears strange, that if plaintiff be Rachel, she should have remained absent, unheard of, for nearly thirty years, but, however singular that disappearance may seem, it surely cannot affect or defeat any rights which she may otherwise have.
*111 We liave carefully read and weighed the voluminous testimony adduced on the trial and feel satisfied, as was the District Judge, who saw and heard the witness and had better opportunities of appreciating their veracity and sincerity, that the plaintiff in this case is the Rachel named in the Cruden’s will and represented as dead before the Probate Court, the more so, as the Record is absolutely silent to the contrary, and the defendants, in their pleadings, have somewhat admitted that, identity.
The witnesses heard to establish this important fact, are. five in number. They all knew Rachel, the legatee, before she left the State; they also well knew the family in which she lived and moved.'
One of them, a distinguished member of the bar, testifies that he conversed with the plaintiff, about transactions which occurred , at the time; that the answers which she. made satisfied him that she must be the person; that it is possible that she might be an impostor, but he did not think it probable.
Another witness of acknowledged respectability states, that after the first conversation had with plaintiff, he felt almost sure she was the girl Rachel, and testifying, he declares, that he believes her to be the woman.
He adds that she looks like the mother of Rachel, who was deaf and dumb, and named Dummy; that Rachel had á peculiarly shaped head, which this woman, the plaintiff, has; that it is not possible that somebody else could have been sufficiently informed to have answered some of his questions, as plaintiff had done.
A third witness, an aged and venerable lady, who well’knew the family and also Rachel, being asked . whether she was positive that the woman in court was Rachel, who once belonged to Cruden, answered she had no doubt of it; that Rachel was a peculiar child; that the shape of her head was singular; that she resembled her mother; that she identifies plaintiff with Rachel by circumstances'and occurrences ; that she recognized plaintiff at first sight, without being told she was Rachel; that it is impossible that some other colored woman could have made her believe that she was Rachel; that she has no doubt of her identity.
A fourth witness testifies that he is positive that plaintiff is the same girl Rachel,- the daughter of Dummy, whom he knew in 1853. He had assisted the defendants in obtaining possession of Rachel’s estate, because he thought she was dead, but that since, he has met plaintiff, and thus discovered that Rachel is alive, and that that plaintiff is the same person.
A fifth witness declares that he well knew Rachel; that she was a servant in his father’s-family in 1853, at Bay St. Louis; that he has *112 conversed with the plaintiff; that she recognized him on the street, calling him by name; that he really believes that the woman in court is the same woman.
The plaintiff, herself, was heard as a witness, in her own behalf. Her testimony is lengthy, made so particularly by the numerous questions of all sorts propounded to her. It does not show more than ordinary intelligence, and indicates the confusion of mind, which persons or her class and condition usually experience, when testifying in a court of justice, and answering the questions and cross-interrogatories, often artfully and guardedly propounded by acute and astute counsel, well informed of tile theory and of the main features, and minute details, actual or constructive, of a vexed and complicated litigation.
On the whole it sufficiently proves, notwithstanding some insignificant contradictions which occur in it, that she is Rachel, tlie emancipated slave and legatee named, and provided for in John Oruden’s will, and represented as dead in the proceedings had before the Probate Court.
The testimony of the two witnesses, who were heard on behalf of the defendants, show how familiar tliey were with Rachel’s history and with those in the midst of whom fehe lived; they do not say that Rachel is dead; they have seen and examined the plaintiff in court and do not assume to say that she is not the Rachel of the will. They admit that the plaintiff has about the same color as Rachel.
In presence of that mass of testimony which covers one hundred pages and more of the transcript; and, in the absence of any successful effort on the part of the defendant to produce the witness who swore to Rachel’s death, and whom the District Judge thought was a myth, or even an attempt to corroborate that statement, we are satisfied that the lower court decided correctly.
Judgment affirmed.