# ANKENY v. CLARK.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF WASHINGTON.

No. 64. Argued December 21, 22, 1892. — Decided March 27, 1893.

When one party to a special contract not under seal refuses to perform his side of the contract, or disables himself from performing it by his own act, the other party has thereupon a right to elect to rescind it, and may, on doing so, immediately sue on a *quantum meruit* for anything he had done under it previously to the rescission.

This doctrine was supported by the Supreme Court of the Territory of Washington in this case, and is now sustained by this court, notwithstanding the decision of the Supreme Court of the State of Washington in *Distler* v. *Dabney*, 23 N. W. Rep. 335, construing the code of that State adversely to it.

*Stutsman County* v. *Wallace*, 142 U. S. 293, explained and distinguished from this case.

Judgments of Territorial Courts in mere matters of procedure are not sub-

ject to reversal because of decisions made in subsequent cases by the courts of the State, after its admission, while the former cases were pending on appeal in this court.

Defects in the pleadings in this case, if any, not having been questions below, cannot operate here to invalidate the trial there.

A title derived from a land grant railroad company which has not received a patent, by reason of failure to pay the costs of surveying, is not a title which a party who has contracted for a deed of the land and has paid the purchase price therefor, is obliged to accept.

When a contract is entered into to convey and to purchase a tract of land, and title fails as to part of it, the purchaser may rescind the contract as to all.

When part of a contract of purchase of land is that the purchaser shall assume and pay a mortgage thereon, if the title to a part of it fails he may rescind the contract without paying the mortgage.

When a contract to convey land permits the purchaser to enter and occupy, and he does so and makes the payments prescribed by the contract, and the seller fails to convey by the agreed title, the seller cannot, in an action by the purchaser to recover back the purchase money, set up as an offset a claim for the rent of the land during the buyer's occupancy.

IT appears from the record in this case that on October 20, 1882, at Walla Walla, in Washington Territory, Levi Ankeny, the plaintiff in error, entered into a contract with Van Buren Clark, the defendant in error, by which Ankeny agreed to sell and convey to Clark two quarter sections of land in Walla Walla County in consideration of 12,000 bushels of wheat, to be delivered in three annual instalments of 4000 bushels each, and of the assumption by Clark of a mortgage of $3000 on the land. This contract was evidenced by three written instruments as follows:

.1. A bond from Ankeny to Clark in the penal sum of $10,000 conditioned to convey the land to Clark upon his paying the consideration according to agreement.

2. A "wheat note" from Clark to Ankeny, which reads as follows:

"WALLA WALLA, W. T., *Oct.* 20, 1882.

"For value received I promise to pay to Levi Ankeny or order twelve thousand (12,000) bushels of good, merchantable wheat, said wheat to be delivered to the owner of this note at any railroad station in Walla Walla County, Washington Ty.,

and payments to be made as follows : On or before Oct. 15th, 1883, four thousand (4,000) bushels ; on or before Oct. 15th, 1884, four thousand (4,000) bushels ; and on or before Oct. 15th, 1885, four thousand (4,000) bushels ; the owner of this note to furnish sacks for said wheat."

3. A chattel mortgage from Clark to Ankeny to secure the payment of the wheat note.

Under this agreement, Clark entered into possession of the land and continued in possession of it until the fall of 1886.

In performance of this contract, Clark, in December, 1883, delivered to Ankeny 4167 bushels of wheat, and in September, 1885, he delivered 8600 bushels, making 767 bushels more than the contract called for. Ankeny accepted this wheat in fulfilment of the contract.

After the delivery of the wheat to Ankeny, Clark demanded a deed for the land. This Ankeny neglected to give, putting Clark off from time to time upon one pretext or another, until Clark, becoming impatient, finally insisted either upon a deed to the land or payment for his wheat. Clark was then referred by Ankeny to the latter's attorneys, who informed him that he could have a warranty deed to the quarter on the even section and a quitclaim deed to the quarter on the odd section, or the railroad land, as it was called, and they further informed him that if the Northern Pacific Railroad Company should not get title to the odd section and he should be obliged to procure title from the government, Ankeny would pay the necessary expenses of obtaining title in that way. This does not seem to have satisfied Clark, and on November 16, 1886, he served upon Ankeny the following notice :

"WALLA WALLA, W. T., *Nov.* 16, 1886.
'Levi Ankeny Esq., Walla Walla, W. T.

"DEAR SIR: I have performed my part of the contract in the purchase of the land described in your bond to me. I have learned that you have no title to one hundred and sixty acres of it. You have refused to give me anything more than a quit-claim deed to this part of the land. I cannot accept

such a deed. It was not what the contract called for. Unless within five days from this date you convey a perfect title to me to the whole of the land described in the bond by a good and sufficient conveyance I will, at the end of that time, abandon this land and surrender the possession to you and look to you for such compensation as the law allows me on account of violation of the contract.

"Resp'y,                                       V. B. CLARK."

Ankeny seems to have paid no attention to this notice, and Clark, several days thereafter, taking a witness with him, went to Ankeny's bank and formally surrendered possession of the land to Ankeny. Clark then abandoned possession of the land and has not occupied it since.

Subsequently to all this, and on the 19th day of March, 1887, Clark brought this action in the District Court of the First District to recover from Ankeny the value of 12,767 bushels of wheat delivered under the contract. The case was tried before a jury, who, upon the direction of the court, brought in a verdict for the plaintiff, and judgment was given upon the verdict.

The defendant took the case in error to the Supreme Court of the Territory of Washington, which affirmed the judgment of the District Court. The case is now before this court on error to the Supreme Court of the Territory of Washington.

*Mr. John H. Mitchell* for plaintiff in error.

I. The plaintiff must recover, if he recover at all, upon the cause of action stated in the complaint. He cannot in his reply be permitted to introduce a new cause of action and recover upon that. *Brown v. McCune*, 5 Sandford Sup. Ct. (N. Y.) 224; *Campbell v. Mellen*, 61 Wisconsin, 612; *Durbin v. Fisk*, 16 Ohio St. 533; *Duponti v. Mussy*, 4 Wash. C. C. 128; *Burnheimer v. Marshall*, 2 Minnesota, 78; *Hatch v. Coddington*, 32 Minnesota, 92; *Hite v. Wells*, 17 Illinois, 88; *McConnel v. Kibbe*, 29 Illinois, 483; *Burdell v. Denig*, 15 Fed. Rep. 397. The cause of action stated in the complaint is

assumpsit for the recovery of the reasonable value of certain wheat alleged to have been sold and delivered to defendant by plaintiff, while the cause of action stated in the reply is the alleged breach of a specific contract. The evidence to support the theory of the reply would have been inadmissible to sustain the averments in the complaint, and *vice versa. Distler* v. *Dabney*, 23 N. W. Rep. 335.

II. The plaintiff must plead and prove a rescission of the contract, or such facts as entitle him to treat it as rescinded. *Riddell* v. *Blake*, 4 California, 264; *Thayer* v. *White*, 3 California, 228; *O'Rielly* v. *King*, 28 How. Pr. 408; *Shultz* v. *Christman*, 6 Mo. App. 338; *Clay* v. *Hart*, 49 Texas, 433. In this action he has done neither.

III. In order to rescind a contract for the sale of land on the ground that the vendor cannot perform it because he has no title to the land, it is necessary for the vendee to aver and show an outstanding paramount title in another; *Thayer* v. *White*, 3 California, 228; *Riddell* v. *Blake*, 4 California, 264. There is no averment in the pleadings of a paramount title in the United States, or in any other person; nor is there any evidence to support such an averment, had it been made.

IV. The Supreme Court of the territory, it will be observed, based its ruling on the doctrine laid down by this court, first, in the case of *Railway Co.* v. *Prescott*, 16 Wall. 603, approved in *Railway Co.* v. *McShane*, 22 Wall. 444, 462, and adhered to in *Northern Pacific Railroad* v. *Traill County*, 115 U. S. 600.

All that can possibly be claimed for the principle enunciated in these cases, and all ever intended by this court, it is respectfully submitted, is simply this: that until the company has complied with the provisions of the above proviso and paid into the Treasury of the United States the cost of surveying, selecting and conveying the lands claimed, the United States may withhold the evidence of a legal title already vested in virtue of a present grant, in order to protect its lien for the cost of surveying, selecting and conveying the lands, and that in such case, until patent does issue, the lands shall not be subject to state or territorial taxation.

But the rule does not affect a case like this, where it appears affirmatively that the lands have been earned by the construction of the road and its acceptance, and that the party derives title through a deed from the railroad company, and it is not shown that the costs of survey have not been paid.

V. The legal title of the United States to the public lands may pass as well by an act of Congress in the words of a present grant as by a patent; and the act granting lands to the Northern Pacific Railroad Company is a grant *in præsenti; Wilcox* v. *Jackson,* 13 Pet. 498; *Rutherford* v. *Greene,* 2 Wheat. 196; *Stoddard* v. *Chambers,* 2 How. 284; *Meegan* v. *Boyle,* 19 How. 130; *Railroad Co.* v. *Smith,* 9 Wall. 95; *Schulenberg* v. *Harriman,* 21 Wall. 44; *Langdeau* v. *Hanes,* 21 Wall. 521; *Leavenworth, Lawrence & Galveston Railroad* v. *United States,* 92 U. S. 733; *Barney* v. *Dolph,* 97 U. S. 652; *Simmons* v. *Wagner,* 101 U. S. 260; *Van Wyck* v. *Knevals,* 106 U. S. 360; *Kansas Pac. Railway* v. *Dunmeyer,* 113 U. S. 629; *Walden* v. *Knevals,* 114 U. S. 373; *St. Paul & Pac. Railroad* v. *Northern Pacific Railroad,* 139 U. S. 1; *Wisconsin Central Railroad* v. *Price County,* 133 U. S. 496; *United States* v. *Missouri, Kansas &c. Railway,* 141 U. S. 358; *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241; *Sioux City &c. Land Co.* v. *Griffey,* 143 U. S. 32; *New Orleans Pacific Railway* v. *Parker,* 143 U. S. 42.

VI. The pleadings are destitute of any allegation as to the rescission of the contract, and no rescission by agreement is proven. The evidence is conflicting, but plaintiff's evidence, if uncontradicted, would not establish an agreement to rescind. *Dial* v. *Crain,* 10 Texas, 444; *Pratt* v. *Morrow,* 45 Missouri, 404; *S. C.* 100 Am. Dec. 301; *Thurston* v. *Ludwig,* 6 Ohio St. 1; *S. C.* 67 Am. Dec. 328. In any event, the question as to whether plaintiff had complied with his part of the contract, as also whether there was a rescission of the same, were questions of fact for the jury under the instructions of the court, and it was grave error in the court in directing a verdict for plaintiff.

VII. Plaintiff paid the wheat on the contract for the purchase of the land. He received possession of the land from the defendant under the same contract. It is also admitted

that the use of the land while held by the plaintiff under the contract was of the value of $2127. If the plaintiff is entitled in this action to rescind the contract, or treat it as rescinded, and recover the value of the wheat paid on the contract, he should deduct the value of that which he received under it. *Moyer* v. *Shoemaker*, 5 Barb. 319; *McIndoe* v. *Morman*, 26 Wisconsin, 588; *Baston* v. *Clifford*, 68 Illinois, 67; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Burg* v. *Cedar Rapids and Missouri Railroad*, 32 Iowa, 101; *Masson* v. *Bovet*, 1 Denio, 69; *S. C.* 43 Am. Dec. 651; *Fratt* v. *Fiske*, 17 California, 380.

*Mr. John B. Allen* for defendant in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

Numerous errors have been assigned to the rulings of the court below. The first has to do with a question of pleading. The plaintiff declares in assumpsit for the value of a certain amount of wheat by the plaintiff sold and delivered to the defendant. To this the defendant answered, setting up the execution of a so-called wheat note and a chattel mortgage to secure it, and alleging that " all the wheat delivered to defendant by plaintiff was delivered and received as payment on said note and not otherwise." In this answer no mention was made of any contract for the sale of land. The plaintiff, by way of replication, made a full statement of the contract for the sale of the land, alleging performance on his part, and default on the part of the defendant. He averred that after he, the plaintiff, had so performed said contract by the delivery of the wheat to the defendant, he duly demanded that defendant should convey the land to the plaintiff, as by his bond he had undertaken to do; that the defendant neglected and refused so to do, and still neglected and refused to grant and convey said land to the plaintiff by any good and sufficient deed, and that said defendant had no title to one parcel of the land described in the bond, and that since the making of the contract defendant was not the owner or seized in fee or

at. all of said land. He further alleged that the wheat mentioned in his complaint or declaration, except an excess thereof over the requirements of said bond, was the purchase price of the land; and that, by reason of defendant's neglect and refusal and inability to perform the said contract, the defendant became and was indebted to plaintiff for the reasonable value of said wheat, and that such demand constituted the cause of action in the complaint pleaded.

In disposing of the contention of the plaintiff in error that the pleadings disclose a departure by the plaintiff below from the cause of action set forth in his complaint, and a resort to a new and different cause of action in his replication, we are, of course, entitled to regard the allegations of fact contained in the complaint and replication as true.

It would, therefore, appear that there was a contract whereby the defendant below was to grant and convey unto the plaintiff certain tracts of land by a good and sufficient deed of conveyance, in consideration whereof the plaintiff was to deliver to the defendant twelve thousand bushels of wheat; that the plaintiff performed his part of the contract by delivering the said wheat, which was received by the defendant; that the plaintiff thereupon demanded of the defendant a conveyance of the land; that defendant neglected and refused to grant and convey said tracts of land by any good or sufficient deed; and that, as to one of the tracts, the defendant had no title to convey.

Upon such a state of facts it seems plain that the plaintiff had a right to treat the contract as at an end, and to bring an action to recover the value of the wheat he had delivered to the defendant, and such other damages as he might have suffered by reason of that failure of the latter to perform his part of the contract; and, *a fortiori*, that he might waive any demand for consequential damages, and confine his claim to a demand for the value of the wheat. In the latter event he might well assert his claim by a count alleging the delivery and receipt of the wheat, a consequent duty on the defendant to pay its value, and a demand for the same.

Under the ordinary system of pleadings, an action of

assumpsit would lie to recover back purchase money paid upon a contract of sale which has been rescinded.

Smith expresses the doctrine, in his note to *Cutter* v. *Powell*, (2 Leading Cases, 30, 7th American edition,) thus:

"It is an invariably true proposition that whenever one of the parties to a special contract not under seal has, in an unqualified manner, refused to perform his side of the contract, or has disabled himself from performing it by his own act, the other party has thereupon a right to elect to rescind it, and may, on doing so, immediately sue on a *quantum meruit* for anything he had done under it previously to the rescission."

The learned author sustains his proposition by citing *Withers* v. *Reynolds*, 2 B. & Ad. 882; *Planché* v. *Colburn*, 8 Bing. 14; *Palmer* v. *Temple*, 9 Ad. & El. 508.

Well-considered American cases are to the same effect. *Eames* v. *Savage*, 14 Mass. 425; *McCrelish* v. *Churchman*, 4 Rawle, 26; *Baston* v. *Clifford*, 68 Illinois, 64; *Stahelin* v. *Sowle*, 87 Michigan, 124.

It is, however, contended that, under the code of Washington, a different rule prevails, and the case of *Distler* v. *Dabney*, 23 N. W. Rep. 335, decided by the Supreme Court of that State, is cited. That decision was made after the trial of the present case, and while the appeal from the Supreme Court of the Territory of Washington was pending in this court; but it is claimed that, under the doctrine of *Stutsman County* v. *Wallace*, 142 U. S. 293, when, pending an appeal from a territorial court to the Supreme Court of the United States upon a question of local law, the Territory is admitted as a State, and the Supreme Court of the new State reaches an opposite conclusion upon the same question, the later decision will be followed by the Supreme Court of the United States.

It does, indeed, appear that, in the case of *Distler* v. *Dabney*, the Supreme Court of the State of Washington has construed the code of that State as meaning that the plaintiff's complaint must contain his real cause of action, and that he cannot be permitted to meet matter set up in the answer by resorting, in his replication, to a new cause of action inconsist-

ent with the statement made in the complaint. The facts of that case were not dissimilar to those of the case in hand, and it must be conceded that, if we are bound to adopt the construction put by the Supreme Court of the State on the code of the State as applicable to the code of the Territory, notwith-standing an opposite view of the Supreme Court of the Territory, it would lead to a reversal of the judgment in this case, unless, indeed, the objection was waived by the subsequent conduct of the defendant.

It would seem to be altogether unreasonable that the judgments of territorial courts, in mere matters of procedure, should be subject to reversal, because of decisions made by the courts of the State in subsequent cases, while the former cases were pending on appeal in this court. Nor do we understand the case of *Stutsman County* v. *Wallace* to so hold. In that case there were involved a substantive right to an estate and a construction of the tax laws of the State and Territory, and it was pointed out, in the reasoning of this court, that our mandate must be issued to the Supreme Court of the State, which, in its turn, directs the state court succeeding to the District Court of the Territory to proceed in conformity to our judgment; and it would seem to irresistibly follow that, in the enforcement of a law common to the Territory and to the State, this court must, in pursuance of the well-settled rule, adopt the construction put upon the local statute by the highest court of the State.

The distinction between that and the present case is obvious. The question before the territorial courts in the particular we are now considering, involved no substantive right, but a mere matter of orderly procedure in the trial court, and we are satisfied with the ruling of the Supreme Court of the Territory that the District Court did not err in regarding the facts set up in the replication as properly pleaded to the matters alleged in the answer, and as not, in substance, a departure from the complaint.

The course of the District Court at the trial was approved by the Supreme Court of the Territory, and surely cannot now be impugned, because, in a later and different case, arising in,

the courts of the new State, the Supreme Court of the State declares the methods to be followed by the courts of the State. Even if, as a matter of technics, the replication was a departure from the complaint, it is not easy to see how the defendant could have availed himself of such a defect in a court of error. His proper course, if he wished to invoke the rigor of the law, was to raise the question either by a demurrer or by a motion; but his conduct in agreeing to a change of venue, after the pleadings had been perfected, in entering into a stipulation as to the principal facts of the case, and in going to trial upon the issue as made up, ought to preclude him from opening the pleadings at the trial.

These views also dispose of the further objection that the plaintiff did not, in his replication, plead a rescission of the contract. But the reply did allege facts that gave a right to rescind, and the plaintiff's evidence, if true, sustained those allegations. Such a defect, if it were one, would, if demurred to, have been curable by amendment, and cannot operate in a court of error to invalidate the trial below.

Assuming the sufficiency of the pleadings, we are brought to consider the second question in the case, and that is whether, upon the evidence, the plaintiff was entitled to a verdict and judgment. The trial court having thought fit to peremptorily direct the jury to find a verdict for the plaintiff in a stated amount, the defendant is obviously entitled to the benefit of every fact and presumption which might have justly controlled the jury in his favor, or, in other terms, the plaintiff must be able to sustain his judgment as the proper conclusion of the law upon the uncontradicted or admitted facts of the case.

There were three principal matters of contention in the trial court:

1st. Did Ankeny have a good title to the northeast quarter of section 19, being part and parcel of the lands which he agreed to sell to Clark?

2d. Did Ankeny make an efficient tender of a good and sufficient deed of conveyance?

3d. Supposing that Ankeny failed in one or both of these particulars, was Clark disabled from availing himself of such

failure by having himself failed to pay the mortgage for $3000 upon the land contracted for, and which he had agreed to pay as part of the purchase money; and did he waive tender of a deed?

We shall briefly consider these subjects in their order. And first, as to Ankeny's title to the northeast quarter of section 19. It was conceded, in the stipulation filed, that the main line of the Northern Pacific Railroad Company was completed in the year 1880, on the route and line shown by certain maps of definite location attached to the stipulation, and that after examination and report by commissioners, as provided in the act of Congress, the road was accepted by the President of the United States; that, on May 30, 1881, the Northern Pacific Railroad Company executed and delivered to one Peter Huff a warranty deed for said northeast quarter of section 19; and that, on December 13, 1881, the said Peter Huff, together with his wife, executed and delivered to Ankeny a warranty deed for the said northeast quarter of section 19. Upon this state of facts it was contended by the plaintiff Clark that there was nothing to show that the Northern Pacific Railroad Company had paid into the Treasury of the United States the cost of surveying, selecting and conveying the same, as prescribed by the act of July 15, 1870, nor to show that any patent had been granted to the railroad company, and that hence, within the cases of *Railway Company* v. *Prescott*, 16 Wall. 603, *Railway Company* v. *McShane*, 22 Wall. 444, and *Northern Pacific Railroad* v. *Traill County*, 115 U. S. 600, the Northern Pacific did not have and hold the legal title to the tract in question; and, therefore, that the conveyance by the railroad company to Huff and that by Huff to Ankeny did not operate to vest a good legal title in the latter.

On the part of the defendant Ankeny it was claimed that by force of the original grant to the Northern Pacific Railroad Company, and the filing of its map of definite location, and by reason of the construction and completion of its road, and the acceptance thereof by the President of the United States, there was vested in the railroad company a good legal

title; and that it was not necessary to show affirmatively the payment of the cost of the survey, nor to show that a patent had been granted to the railroad company; and to sustain this position he cited the case of *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241.

Whether the reasoning and language of the cases so cited by the respective parties can be satisfactorily reconciled, we do not feel called upon to determine, because we think that, at any rate, there is doctrine common to the cases that warranted the plaintiff in refusing to accept the defendant's deed.

The opinions in the earlier cases, in treating of the effect attributable to the non-payment by the railroad companies of the cost of surveying, selecting and conveying the lands, as prescribed by the act of July 15, 1870, 16 Stat. 305, c. 292, speak of the title remaining in the United States until such payment shall be made. And the court below seized on this language as establishing, in the present case, a want of legal title in the Northern Pacific Railroad Company, and consequently in its grantee; and hence held that the plaintiff was justified in rejecting the defendant's title.

In the case of *Deseret Salt Co.* v. *Tarpey,* the court, per Mr. Justice Field, regarded the failure or omission to pay the survey charges as operative to " preserve to the government such control over the property granted as to enable it to enforce the payment of these costs, and for that purpose to withhold its patents from the parties entitled to them until such payment," and thus to give the government a lien for said costs.

We therefore conclude that Ankeny, the defendant below, if he held only a title derived from the Northern Pacific Railroad Company, and if that company had not paid the costs of surveying, and had not received a patent, did not hold such a title as it was obligatory on the plaintiff to accept, and that the plaintiff below had a right to refuse the tender of defendant's deed, declare the contract off, and maintain his action for the recovery of the purchase money.

But it is contended that the record does not disclose that the costs of survey and conveyance had not been paid, and that it may be presumed that they had been paid, and even

that the lands had been actually patented to the railroad company, in which event the question whether the costs of survey had been paid would be immaterial.

Turning to the pleadings and to the stipulation as to the facts, we find that the defendant did not aver in his answer, nor was it admitted in the stipulation that the railroad company had, complied with the necessary conditions as to payment of costs of survey, nor was it alleged or admitted that a patent had been issued to the railroad company for the lands in question. The plaintiff having alleged want of title in the defendant, and the latter having met that allegation only by the admission in the stipulation that the railroad company had filed its map of definite location and had constructed its road to the satisfaction of the President, we think that the court below was warranted in holding that the defendant's title was imperfect, and that there was no question of fact to submit to the jury.

If we are right in the conclusion that the defendant's title to the land in dispute was imperfect, and subject to be defeated by the United States in asserting their right to be paid the costs of survey, it is not necessary to consider whether the defendant made a proper tender of a deed of conveyance, or whether the deed was in the form called for by the contract, or whether the plaintiff waived a tender of the deed.

If the questions of tender and of waiver actually confronted us, it might be difficult to show that they ought not to have been submitted to the jury. But if the defendant had no title which he could insist on the plaintiff's accepting, then those questions have no legal significance.

An argument is made that, as the failure of title was only as to part of the land, the plaintiff could not elect to rescind as to all. But the contract was an entire one. The purchase money was not apportioned among the several tracts. The plaintiff's right to refuse to accept was, therefore, clear. *Duke of St. Albans v. Shore*, 1 H. Bl. 270.

Again, it is contended that the plaintiff was in no position to rescind, because he had not himself fully complied with his part of the contract, in that he had not paid the mortgage of

$3000 that was on the land, and the payment of which he had assumed. If, however, the defendant had no sufficient title to the land, that would relieve the plaintiff from the duty of paying the incumbrance. It cannot be plausibly maintained that, before a vendee can decline to accept an imperfect title he must pay off a mortgage whose payment was to constitute part of the purchase money.

Another assignment of error is to the refusal of the court to charge the plaintiff and credit the defendant with the rent of the land during the period while the plaintiff was in possession. But the plaintiff was not in possession as a tenant, or under any agreement that he should pay rent. Nor does the law, under the circumstances of the case, raise any obligation to pay rent. *Bardsley's Appeal*, 10 Atlantic Rep. 39, 40, is directly in point : " It may be conceded, if one occupy the land of another by the consent of the latter, without any agreement, that assumpsit for use and occupation will lie. Such, however, is not this case. Here the possession was taken and maintained under an express contract, by which the appellant, in consideration of $8000 to be paid therefor, agreed to convey to the vendee a certain house free and clear of all incumbrances, and title to be perfect. At the date of the agreement the vendee paid $500, and was at all times ready to pay the residue of the purchase money on a deed being delivered to him according to the agreement. The vendor was not able to execute a deed according to his contract. These facts show the vendee was not in possession under such circumstances as to create the relation of landlord and tenant. There was neither an express nor an implied contract to pay rent, and no action could be maintained to recover for the use and occupation of the premises."

The authorities are uniform on this subject, and we content ourselves with a reference to a few cases. *Patterson* v. *Stewart*, 6 W. & S. 527; *Williams* v. *Rogers*, 2 Dana (Ky.), 374; *Gillet* v. *Maynard*, 5 Johns. 86; *Guthrie* v. *Pugsley*, 12 Johns. 126; *Cook* v. *Doggett*, 2 Allen, 439.

None of the errors assigned having been sustained, the judgment of the court below is                    *Affirmed.*