## SMILEY v. BARKER.

(Circuit Court of Appeals, Eighth Circuit. November 22, 1897.)

### No. 913.

1. STATUTE OF FRAUDS—WAIVER OF WRITTEN CONTRACT.

Strict performance of a written contract subject to the statute of frauds may be waived by oral words, and by acts inconsistent with an intention to require it, which have induced the other party to omit such performance, though such words may be inadmissible, under the statute of frauds, for the purpose of showing a new contract modifying the old one.

2. SAME—SALE—DELIVERY—RESCISSION.

A written contract of sale providing for delivery and payment "about" a specified date gives the purchaser at least as late as midnight of that day in which to perform it; and if the seller, without notice or tender of the thing sold, or demand of payment, sells it to a stranger during that day, and thus disables himself from performing the contract, this is a repudiation of it, which gives the purchaser the option either to rescind and sue in assumpsit to recover any money he may have paid, or to sue for damages for breach of the contract. Therefore, where the purchaser sues to recover money which he has paid on the contract, there is no error in permitting him to testify that, on learning of the sale to a third party, he treated his own payment as forfeited, thus showing that he elected to rescind.

3. APPEAL AND ERROR—REVERSAL.

A just judgment, which is warranted by the record and the facts, will not be reversed because it was based on a wrong reason.

4. SAME—WAIVER OF JURY.

In a case tried to the court, a jury being waived, the only question relative to the findings is whether or not they are sufficient to sustain the judgment, and no question of the sufficiency of the evidence to sustain the findings can be considered.

In Error to the Circuit Court of the United States for the District of Wyoming.

This writ of error challenges a judgment for the recovery of part of the purchase price paid by Samuel M. Barker, the defendant in error, to Robert A. Smiley, the plaintiff in error, for 6,000 sheep, none of which were ever delivered. Barker alleged in his complaint that on November 21, 1892, he paid $1,000 to Smiley, and promised to pay him $28,500 on the delivery of 6,000 sheep, and that Smiley made a written contract with him to deliver the sheep to him at Medicine Bow, in the state of Wyoming, on May 1, 1893; that on May 31, 1893, he paid $5,000 on this contract, and he and Smiley made another written agreement, to the effect that the balance of the money should be paid when the sheep were delivered, about November 1, 1893, that Barker should pay $750 interest and all the expense of shearing and herding the sheep meanwhile, not exceeding

$100 per month, and that Smiley should sell the wool, and apply its proceeds in payment of the purchase price on the contract; that on October 25, 1893, Smiley agreed to ship 3,000 of the sheep to Chicago by way of Silver Creek, in the state of Nebraska, where Barker was, and where he had a suitable place to feed the sheep, to deliver these sheep to him at Silver Creek if he was then able to pay $10,000 on the contract, and to keep the remaining 3,000 sheep for him until May 1, 1894, when Barker was to pay the unpaid balance owing upon the agreement; that he raised the $10,000, and had it ready to pay about November 1, 1893, but that Smiley sold the 3,000 sheep to a stranger before that date, kept the $6,000 paid to him as part of the purchase price, and failed to deliver any of the sheep. He sued for and prayed to recover the $6,000 as money had and received by Smiley to his use. The plaintiff in error answered. In his answer he admitted the execution of the contracts of November 21, 1892, and May 31, 1893, and the payment of the $6,000, but he denied the agreement of October 25, 1893, and averred that that agreement was to the effect that the defendant in error should pay $10,000 to him at Rawlins, in the state of Wyoming, on or before October 27, 1893, and that thereupon he should deliver the 3,000 sheep to him at Medicine Bow, and should keep the remainder until the 1st of May, 1894, when they should be delivered, and the unpaid balance of the purchase price should be paid. He alleged that Barker failed to pay the $10,000 as he agreed, and thereby violated his contract, and he claimed $11,000 for his breach of it. The court tried the case, without a jury, and filed special findings of fact and conclusions of law. The material facts which it found were these: The three contracts alleged by the defendant in error in his complaint were made, but the last one was not in writing. Before this last contract was made, the plaintiff in error wrote to Barker, and proposed that he should take but 3,000 instead of 6,000 sheep about November 1, 1893. About October 22, 1893, the plaintiff in error went to Silver Creek, Neb., where he found Barker, and made the oral agreement with him to ship the 3,000 sheep about November 1, 1893, to Chicago, to feed them in transit at Silver Creek, Neb., to accept $10,000 when they arrived there, and to deliver them to Barker, and to extend the time for the delivery of and the payment for the remaining 3,000 sheep until May 1, 1894, if the $10,000 was paid. Barker agreed to secure the $10,000 if possible. He did secure it, and had it on hand, ready to pay over, on November 1, 1893, at Silver Creek, where he was awaiting the arrival and delivery of the 3,000 sheep. Before the October agreement was made, he had sent 18 cars to Medicine Bow for the purpose of transporting the sheep East. After the October contract was made, the plaintiff in error requested him, by letter, to turn these cars over to him, so that he could use them to ship the 3,000 sheep to Chicago; and Barker sent a written order for the cars, with detailed directions for shipping the sheep, which Smiley received on November 1, 1893. On that day he sold and delivered 2,750 of the sheep to a stranger, without any notice to the defendant in error, who first learned of this fact on November 4, 1893. The court found as conclusions of law that the plaintiff in error waived the defense of the statute of frauds by his pleading; that the oral agreement of October 22, 1893, was a valid and binding contract; that Smiley had failed to comply with his written contracts as modified by this oral agreement; that he was not entitled to recover upon his counterclaim; and that the defendant in error must have judgment against him for the portion of the purchase price which he had paid, and interest.

Frederick H. Bacon, for plaintiff in error.

T. F. Burke (B. F. Fowler on the brief), for defendant in error.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal complaint concerning the trial of this case is that the court below admitted evidence of the oral agreement of October, 1893, which tended to modify the written contracts for the sale of the

sheep, held that oral agreement valid, and rendered this judgment of $6,000 and interest for its breach, over the repeated objections of the plaintiff in error that this contract was void under the statute of frauds, and without consideration. A careful examination of the record has convinced us, however, that the invalidity of this oral agreement is not necessarily fatal to the judgment, and for these reasons:

1. It is assigned as error that the testimony of Barker and another to the terms of the oral agreement was erroneously received, because that contract fell under the ban of the statute of frauds, and was without· consideration. Conceding that parol agreements modifying written contracts that are within the statute of frauds are themselves within that statute, and cannot be enforced (Emerson v. Slater, 22 How. 28, 42, and cases there cited; Swain v. Seamens, 9 Wall. 254, 271), and that the plaintiff in error had not waived this defense by his answer, we are still of the opinion that the court rightfully received this evidence on another ground. On October 1, 1893, the plaintiff in error was bound, under written contracts, to deliver 6,000 sheep to the defendant in error at Medicine Bow, Wyo., and the latter was bound to pay him about $24,000 for them on delivery. Thereupon he wrote to Barker, and suggested to him that he should take only 3,000 instead of 6,000 sheep that year. He then went to Barker's ranch, at Silver Creek, Neb., and told him that he would ship the 3,000 sheep from Medicine Bow Station to Chicago, by way of Silver Creek; that he would stop and feed them there; and that, upon the receipt of the $10,000 when he arrived there, he would deliver these sheep to Barker; and would defer the delivery of the remaining 3,000 and the payment of the unpaid balance under the written contracts until May 1, 1894. Barker assented to this proposition, and proceeded to raise the $10,000. Smiley went to Medicine Bow; and, in order to enable him to ship the 3,000 sheep to Silver Creek, he wrote Barker for an order for the delivery of the 18 cars which he had sent for the transportation of the sheep before the conversation about the delivery of the 3,000 sheep at Silver Creek. Barker relied on these letters and statements of Smiley, and was thereby induced to stay away from Medicine Bow about November 1, 1893, when he would otherwise have been there to accept delivery of the sheep and pay for them, to send him the order for the cars, to raise the $10,000, and to await his arrival at Silver Creek with the sheep.

The statute of frauds may not be used to perpetrate a fraud. One cannot take advantage of his own wrong. One may not so speak and act as to knowingly induce another to change his position, and then avail himself of that change to his prejudice. The letters and statements of Smiley in October lulled Barker into security, and prevented his attendance at Medicine Bow to receive or pay for the sheep on November 1, 1893; and he cannot be permitted to take advantage of this absence, which he himself had induced, to default Barker on his contract, and charge him with damages. The letters and conversation constitute a waiver of the delivery and payment at the time

and place named in the written contracts, and, although they did not evidence an enforceable agreement, they were all admissible to establish this waiver.

Bishop, in his work on Contracts, says, at section 792:

"Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards."

And the supreme court has expressly held that the strict performance of a contract subject to the statute of frauds may be waived by words and acts inconsistent with an intention to require it which have induced the other contracting party to omit it. Swain v. Seamens, 9 Wall. 254, 272; Dodsworth v. Iron Works, 31 U. S. App. 292, 299, 13 C. C. A. 552, 554, and 66 Fed. 483, 486; Browne, St. Frauds, §§ 424, 425; Railroad Co. v. Ristine, 40 U. S. App. 579, 582, 23 C. C. A. 13, 14, and 77 Fed. 58, 60.

2. It is assigned as error that the court below found that the oral agreement of October, 1893, was a valid contract, and was violated, and that it based its judgment upon this contract and its breach. But, if we discard this conclusion altogether, the other findings of the court are not insufficient to sustain the judgment. They disclose the facts that under the written contracts themselves, without any waiver or modification, the sheep were not to be delivered nor paid for until about November 1, 1893, and that the plaintiff in error, without notice or tender of the sheep or demand of payment, sold 2,750 of them to a stranger on that day, and thus disabled himself from fulfilling the contracts. This was a repudiation of the agreements before the defendant in error could have been placed in default under the exact terms of the written contracts. The word "about," before the date of delivery and payment in these contracts, has significance, and must have effect. "About" November 1st does not mean "on" November 1st, and this word gave to the defendant in error at least until midnight of that day in which to perform his contract. Moreover, the findings disclose the fact, as we have seen, that the plaintiff in error had waived strict performance at the time and place named in the written contracts, and the defendant in error had changed his position in reliance upon that waiver. Smiley could not then default Barker for a failure to comply with the written contracts without giving him a reasonable notice that such a compliance would be required. The result is that, if we disregard the conclusion of the court relative to the oral agreement, the other findings are sufficient to sustain the judgment either upon the face of the written agreements without considering the waiver, or upon the basis of the waiver. A just judgment, which is warranted by the record and the facts, will not be overthrown because it was based on the wrong reason (Pennsylvania Co. v. Versten [Ill. Sup.] 30 N. E. 540, 541; White v. Railroad Co. [Ind. Sup.] 23 N. E. 782, 786; Railway Co. v. Batsell [Tex. Civ. App.] 34 S. W. 1047); and this judgment cannot be reversed on account of the assignments of error which were leveled at the rulings of the court relative to the oral agreement.

It is assigned as error that the court permitted Barker to testify that he treated the purchase price he had paid as "forfeited" when Smiley had sold the sheep, and that it permitted him to recover the amount he had paid on the contract, instead of restricting him to the difference between the value of the sheep and the amount he was owing for them at the time of the repudiation of the agreement. But Mr. Justice Clifford well said, in Nash v. Towne, 5 Wall. 689, 701:

"Where the seller of goods received the purchase money at the agreed price, and subsequently refused to deliver the goods, and it appeared at the trial that he had converted the same to his own use, it was held at a very early period that an action for money had and received would lie to recover back the money; and it has never been heard in a court of justice since that decision that there was any doubt of its correctness. Anon., 1 Strange, 407."

The refusal of the vendor to deliver the goods purchased, and his conversion of them to his own use before the time of delivery had passed, are a distinct repudiation of the contract. It is a notice to the vendee that he will not abide by and will not perform it. It gives to the purchaser the option to accept the repudiation as a rescission of the contract, and to sue him on the implied assumpsit for money had and received, on the ground that the consideration for the payment he has made has failed, or to sue him for damages for the breach of the agreement. The defendant in error has chosen the former alternative, and the court below committed no error in permitting him to testify to his election, and in allowing him to recover the amount he had paid on the repudiated contracts of sale, with interest. Ankeny v. Clark, 148 U. S. 345, 353, 13 Sup. Ct. 617; Eames v. Savage, 14 Mass. 425; McCrelish v. Churchman, 4 Rawle, 26; Baston v. Clifford, 68 Ill. 67; Stahelin v. Sowle, 87 Mich. 124, 49 N. W. 529; 2 Smith, Lead. Cas. 30 (7th Am. Ed. note); Withers v. Reynolds, 2 Barn. & Adol. 882; Planche v. Colburn, 8 Bing. 14; Palmer v. Temple, 9 Adol. & E. 508; Tiffany, Sales, 235.

Finally, it is assigned as error that the court below found a certain fact not warranted by the evidence; that it failed to find another fact which was established by the testimony; and that each one of its six conclusions of law was wrong. In a case in which a jury has been waived, the only question relative to the findings of a trial court that is open for consideration in a federal appellate court is whether or not those findings are sufficient to sustain the judgment. We have already considered that question in this case, and reached the conclusion that the findings of the court below are ample. No question of the sufficiency of the evidence to sustain these or other findings can be considered by this court. Stanley v. Supervisors, 121 U. S. 535, 547, 7 Sup. Ct. 1234; Wile v. Bank, 36 U. S. App. 165, 167, 17 C. C. A. 25, 26, and 70 Fed. 138; Insurance Co. of North America v. International Trust Co., 36 U. S. App. 291, 303, 17 C. C. A. 616, 618, and 71 Fed. 88, 90; Searcy Co. v. Thompson, 27 U. S. App. 715, 13 C. C. A. 349, and 66 Fed. 92. The judgment below must be affirmed, with costs, and it is so ordered.

THAYER, Circuit Judge. I concur in the order affirming the judgment of the circuit court, but I am unwilling to concede that the de-

fendant below (who is the plaintiff in error here) was entitled to invoke the statute of frauds to prevent the admission of oral testimony relative to the terms of the agreement of October 22, 1893, which modified in some respects the existing written agreement. In view of the manner in which the pleadings in the case were framed, I am of opinion that the defendant waived the protection of the statute of frauds. The defendant below admitted in his answer that the original written agreement for the purchase and sale of the sheep had been modified by mutual consent of the parties on or about October 22, 1893, and that except in two respects the terms of said modified agreement were correctly set forth in the plaintiff's petition. He averred that, by the provisions of the modified agreement, the sum of $10,000 was payable on or before October 27, 1893, at the city of Rawlins, in the state of Wyoming, instead of being payable at Silver Creek, in the state of Nebraska, and that the 3,000 head of sheep were deliverable at Medicine Bow, in the state of Wyoming, instead of being deliverable at Silver Creek, Neb. In all other respects the plaintiff's version of the terms of the modified agreement was admitted to be correct. Moreover, the defendant filed a counterclaim, wherein he pleaded the modified agreement, according to his understanding of its terms, and claimed damages for the breach thereof in the sum of $11,000. The answer contained no suggestion that the statute of frauds would be relied upon to defeat the agreement of October 22, 1893. On the contrary, the counterclaim amounted to an explicit declaration on the part of the defendant that he would himself claim the benefit of the modified agreement, although he knew it to be oral, and that he would demand damages for its nonperformance. Under these circumstances, I think it should be held that the defendant voluntarily elected to waive the benefit of the statute of frauds, and to rest his defense upon the sole ground that the terms of the modified agreement had not been correctly stated in the plaintiff's petition. It is always competent for a litigant to waive the benefit of the statute of frauds. Public policy does not require that a litigant must always take advantage of the statute when he may do so. In the present case it would seem that there is as much reason for holding that the benefit of the statute was intentionally waived by the defendant as there is for holding that, by entering into the modified agreement, the defendant thereby waived a strict compliance with the terms of the written agreement, and may therefore be held liable in damages for a breach thereof. It may be conceded that there are some cases which hold, in effect, that the method of pleading herein referred to does not amount to a waiver of the statute (Gulley v. Macy, 84 N. C. 443; Holler v. Richards, 102 N. C. 549, 9 S. E. 460); but there are other cases which adopt a contrary view, and, upon the whole, I conclude that they announce the better rule (Crane v. Powell, 139 N. Y. 379, 386, 388, 34 N. E. 911; Battell v. Matot, 58 Vt. 271, 5 Atl. 479; Iverson v. Cirkel, 56 Minn. 299, 57 N. W. 800; Gregg v. Garrett [Mont.] 31 Pac. 721).

It is desirable, for many reasons, that the pleadings in a case should disclose in advance the precise questions of law and fact that will be raised on the trial, and all modern rules of procedure have been

83 F.—44

framed to accomplish that object. I think, therefore, that whenever it may fairly be inferred from the method of pleading which has been adopted that a litigant does not intend to raise a given question or avail himself of a statutory defense which he is at liberty to waive, the court should regard that question or that defense as eliminated from the controversy.