## HUMBERT v. CHOPY et al.

### (District Court, D. Colorado. August 17, 1914.)

### No. 6170.

WORK AND LABOR (§ 9*)—RECOVERY ON QUANTUM MERUIT—EFFECT OF EXPRESS CONTRACT.

> Defendants were interested in oil lands which, with other lands, it was proposed to put into a corporation to be organized by defendants and others. Plaintiff, an experienced civil and mining engineer, was employed by defendants to examine the lands as to the probability of their containing oil in commercial quantities, make a report thereon, and aid defendants in negotiating for certain of the lands; defendants agreeing to pay him a specified amount in the capital stock of the proposed company.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiff performed the contract, but without his knowledge defendants negotiated with other parties for the purpose of acquiring such lands to be put into a different corporation, which was brought about and largely financed upon the report and information furnished by plaintiff, and from the organization of which defendants made a large profit. *Held*, that while ordinarily when there is a special contract covering the rendition of services which are not to be compensated in money, but in corporate shares, the remedy for nonperformance is an action for damages for breach of the special contract, defendants having, by their own acts, put it beyond their power to comply with the special contract, and having made use of plaintiff's services in carrying out a plan in breach of the contract, plaintiff was entitled to rescind and sue on quantum meruit for his services.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 23–24; Dec. Dig. § 9.*]

At Law. Action by Pierre Humbert, Jr., against Edmond Chopy and others. On demurrer to the complaint. Demurrer overruled.

Wm. H. Dickson, of Denver, Colo., for plaintiff.

James B. Grant, Wm. V. Hodges, and Mason A. Lewis, all of Denver, Colo., and C. W. Burdick, of Cheyenne, Wyo., for defendants.

LEWIS, District Judge. It appears from the complaint that the plaintiff is a civil and mining engineer; that in February, 1911, he started from Paris, France, to examine and report upon certain supposed oil-bearing lands in the state of Wyoming, at the request of the defendants; that he did at once proceed to his destination and there examine the lands in question and make report to the defendants, and that immediately thereafter he proceeded, at the instance of the defendants, to San Francisco for the purpose of there interviewing and attempting to negotiate with certain parties for obtaining lands which they owned in said supposed oil fields for the defendants, for all of which services the plaintiff was to be compensated by the defendants and reimbursed for traveling and other expenses which he might reasonably incur.

This action is to recover such compensation and expenses incurred, and the pleader has stated his case in four separate counts. The last and fourth count is for the recovery of traveling and other expenses only, incurred by the plaintiff. The third count is for the recovery of the reasonable value of services rendered by the plaintiff in going to San Francisco to interview and negotiate with parties owning lands in said oil fields. The second count is for the reasonable value of plaintiff's services in going from Paris to Wyoming and there examining and reporting upon the character of the lands as to oil-bearing qualities. These three last causes of action are clearly in indebitatus assumpsit under the common counts and are well stated. They will not be further noticed.

Consideration will be given to the demurrer to the first cause of action set out in the first count. This count alleges that the plaintiff is a civil and mining engineer, with large experience in the examination of mining and oil properties; that the defendants were interested in 480 acres of land in the Salt Creek oil fields, Natrona county, Wyoming,

and Henshaw and Fitzhugh also owned a large acreage in the same vicinity, all of which lands were to be put into a corporation to be organized by the defendants and others, having a capital stock of $5,000,-000; that the defendants in February, 1911, requested the plaintiff to go from Paris, France, to Wyoming, and examine said lands as to the probability of their containing oil in commercial quantities, to make a thorough and comprehensive examination of said oil fields and report thereon to the defendants, and that plaintiff also aid the defendants in carrying on negotiations for obtaining lands owned by said Henshaw and Fitzhugh, and that for his services so to be rendered the defendants would pay the plaintiff $200,000 of the capital stock in said proposed company, and would also pay his traveling and other expenses incurred on said trip; that plaintiff went to Wyoming and made extensive exploration and examination of said lands in said oil fields for the purpose of ascertaining the probable existence of oil of such quality and quantity as would justify development, and made comprehensive and detailed reports to the defendants of what he found in that respect; that he also negotiated with Henshaw and Fitzhugh for the purpose of obtaining their lands for the defendants to put into said proposed company, and made a trip to San Francisco for that purpose; that while the plaintiff was so engaged the defendants, without the knowledge of plaintiff and secretly, were carrying on negotiations with other parties for the purpose of acquiring the same lands and other lands to be put into another corporation to be organized by the defendants and others, and that in aid of such purpose the defendants secretly made use of the reports so sent to them by the plaintiff on the character and oil-bearing qualities of said lands, and the defendants with others did, while the plaintiff was so engaged, organize another company, which took over said lands, with a capital stock of $10,000,000, in which latter company the defendants were given a large interest in stock and have profited in the sum of $500,000; that said latter company was brought about and financed largely upon the report and information furnished by the plaintiff as aforesaid, and that the defendants in the organization of said latter company and its acquisition of the property that was to be put into the company as above referred to, have put it beyond their power to comply with their agreement with the plaintiff. The plaintiff alleges in this count that his services so rendered were reasonably worth the sum of $75,000, for which, and expenses necessarily incurred by him, he seeks judgment.

It is conceded that this count is on quantum meruit under the common count also; but inasmuch as the count further discloses that there was a special contract covering the subject of services to be rendered by the plaintiff and by which it appears those services were to be compensated, not in money but in corporate shares, it is claimed that assumpsit will not lie, and that plaintiff's only remedy is for damages on breach of the special contract. In support of this contention on argument of the demurrer the defendants cited as authorities: Bradley v. Levy, 5 Wis. 400; Weart v. Hoagland, 22 N. J. Law, 517; Osterling v. Cape May Hotel Co., 82 N. J. Law, 650, 83 Atl. 887; Meyers v. Schemp, 67 Ill. 469; Mitchell v. Gile, 12 N. H. 390.

These authorities support the defendants' position, and others might be added: Wilkins v. Stevens, 8 Vt. 214; Bernard v. Dickins, 22 Ark. 351, in which case it is said, on the authority of Greenleaf:

"If the mode of payment was any other than in money, the count must be made on the original contract."

And R. R. Co. v. Pressley, 45 Miss. 66, 71:

"Where there is a special agreement to pay for goods, or services, in any other way than in money, it must be specially declared upon."

However, the Vermont Case, supra, in so far as expressions there found support the contention of the defendants, may be considered obiter, for the facts there dealt with disclose a barter in which the articles named were given an agreed value in the contract. There are many cases like it: Elkinton v. Fennimore, 13 Pa. 173; Taplin v. Packard, 8 Barb. (N. Y.) 220; St. Louis Co. v. Soulard, 8 Mo. 665; McKinnie v. Lane, 230 Ill. 544, 82 N. E. 878.

The contention is sound if the contract be still open, that is, if the defendant has not repudiated his obligation and is able to perform; but the law, when applied to the facts here, is the other way. It appears that the defendants put it beyond their power by their own acts to comply with the contract on their part. They kept the plaintiff in the field, rendering the service which he agreed to render, and while he was thus engaged they were carrying on a plan which, if consummated (and which was later consummated), would render it impossible for them to perform. They made use of his services for the purpose of carrying out this latter plan, knowledge of which they withheld from him. Under these facts the plaintiff had a right to elect to rescind the contract and sue on quantum meruit for what he had done. Perkins v. Hart, 11 Wheat. 237, 6 L. Ed. 463; Ankeny v. Clark, 148 U. S. 345, 353, 13 Sup. Ct. 617, 37 L. Ed. 475; Smiley v. Barker, 83 Fed. 684, 688, 28 C. C. A. 9; Canada v. Canada, 6 Cush. (Mass.) 15; Buffkin v. Baird, 73 N. C. 283; Cadman v. Markle, 76 Mich. 448, 43 N. W. 315, 5 L. R. A. 707; Haigh v. Association, 19 W. Va. 792, 802.

The principle is stated in Ankeny v. Clark, supra, thus:

"It is an invariably true proposition that whenever one of the parties to a special contract not under seal has, in an unqualified manner, refused to perform his side of the contract, or has disabled himself from performing it by his own act, the other party has thereupon a right to elect to rescind it, and may, on doing so, immediately sue on a quantum meruit for anything he had done under it previously to the rescission."

In the Canada Case, supra, the defendant agreed to compensate the plaintiff for his services to be rendered by leaving to him his farm on the death of defendant. After the plaintiff had partly executed the obligations on his part the defendant conveyed away his farm so that he put it out of his power to execute the contract on his part. The plaintiff was permitted to recover on quantum meruit for services rendered.

In the Cadman Case, supra, the plaintiff was to receive corporate stock for services to be rendered by him. The defendant broke the contract, and the plaintiff was permitted to recover on quantum meruit.

It is said in Bannister v. Read, 1 Gilm. (Ill.) 99, quoted with approval in Baston v. Clifford, 68 Ill. 67, 70, 18 Am. Rep. 547:

"Although one party to a contract may not alone rescind it, he may, nevertheless, by neglecting or refusing to perform it on his part, place it in the power of the other party, where he is not also derelict, to avoid it, or not, at his pleasure. The breach of one party may, in such case, be treated by the other as an abandonment of the contract, authorizing him, if he chooses to do so, to disaffirm it; and thus the assent of both parties to the rescission of the contract is sufficiently manifested—that of the one by his neglect or refusal to perform his part of the contract, and of the other by his suing, not for such breach, but for the value of any act done or payment made by him under the contract, as if it had never existed."

The demurrer is directed to each and all of the counts. It is not good as to any of them, and will therefore be overruled.

It is so ordered.