CALAF et al. v. FERNANDEZ.

(Circuit Court of Appeals, First Circuit. January 5, 1917.)

No. 1190.

1. MOTIONS ⊚➞36—CONTINUANCE OVER TERM.
  A court has power by an order to carry over pending motions for determination at a subsequent term.

  [Ed. Note.—For other cases, see Motions, Cent. Dig. §§ 45, 46.]

2. MOTIONS ⊚➞58—VACATING OR MODIFYING ORDERS.
  A court has power, while a case and the parties are before it, upon proper hearing, to reconsider, modify, or enlarge its previous orders in respect to a pending controversy.

  [Ed. Note.—For other cases, see Motions, Cent. Dig. § 72.]

3. NEW TRIAL ⊚➞9—ORDER GRANTING—LIMITATION TO CERTAIN ISSUES.
  A court may order a new trial upon a particular branch of a controversy, whether a new trial is granted upon the whole case or only as to certain issues being largely discretionary.

  [Ed. Note.—For other cases, see New Trial, Cent. Dig. § 12.]

4. TRIAL ⊚➞389—TRIAL TO COURT—FINDINGS.
  Where, in an action at law, the cause is submitted to the court without a jury under Rev. St. § 649 (Comp. St. 1913, § 1587), and the court makes a general finding on the issues involving questions of both law and fact, and judgment is entered thereon, a party cannot thereafter demand as of right that special findings be made.

  [Ed. Note.—For other cases, see Trial, Cent. Dig. § 912.]

5. APPEAL AND ERROR ⊚➞219(2)—REVIEW—TRIAL TO COURT.
  Where, in such case, no request was made during the trial for special findings, nor any motion for a general finding in favor of the adverse party, there is no question in respect to the general finding that can be reviewed by an appellate court under Rev. St. § 700 (Comp. St. 1915, § 1668), which provides for a review in such case only of "the rulings of the court in the progress of the trial."

  [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1322, 1323.]

6. VENDOR AND PURCHASER ⊚➞133—CONSTRUCTION OF CONTRACT—ACTION BY VENDOR FOR BREACH.
  A contract in the Spanish language for the sale and purchase of lands to be thereafter acquired by the vendor, construed in an action by the vendor for its breach in respect to the titles which the vendor was bound to furnish, and the decision of the trial court affirmed, which found that the titles tendered by plaintiff were sufficient to comply with the contract and to sustain the action, it further appearing that the refusal of defendants to carry out the contract was not based on any objection to the titles

⊚➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

offered but upon other grounds and that defendants refused to examine the titles.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig..§§ 234–237.]

7. TRIAL ⊂⇒51—TRIAL BY COURT—RECEPTION OF EVIDENCE.

It is not unusual nor improper, especially in a trial before the court without a jury, in cases which involve directly or collaterally questions as to title to real estate, to admit disconnected documentary or oral proofs in respect to links in the chain of title with the understanding, expressed or implied, that if connected they will be competent and material and will be considered, and if not connected they will become immaterial and harmless.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 125.]

In Error to the District Court of the United States for the District of Porto Rico; Hamilton, Judge.

Action at law by José Romero Fernandez against Jaime Calaf and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Francis H. Dexter and Charles Hartzell, of San Juan, Porto Rico (Jacobs & Jacobs, of Boston, Mass., and Nava & Dominguez, of San Juan, Porto Rico, on the brief), for plaintiffs in error.

E. B. Wilcox, of San Juan, Porto Rico, and N. B. K. Pettingill, of Tampa, Fla. (Ben A. Matthews, of New York City, on the brief), for defendant in error.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This case is one in which the plaintiff below sought to recover damages for alleged breach of a contract for the sale of something like 30,000 acres of land in the island of Santo Domingo, for $30,000, and for $5,000 in addition for expenses. The contract contemplated that one party should go out and buy lands, to be located at the places marked in the map of the Republic of San Domingo with the name of "Quemados," "Las Charcas," and "Payabo," and that the other party should take conveyances of the same under circumstances indicated by the provisions of the contract. It was clearly a contract in which the seller was not undertaking to sell what he at the time owned, but one under which the party contracting to sell was to go out and buy lands and convey them to the party contracting to take them.

The contract in question is in the Spanish language, and some of its provisions have been translated in the arguments and in the record in different ways, and particularly the words "ofrescan completa garantia," which appear in clause 4 of the contract. One version is that the Spanish words quoted mean that the deeds to the property are to be in good condition and safe; another that they mean, in the sense of the contract, that the titles be safe, and such is the version of Judge Hamilton; and another, which is the version of counsel for the plaintiffs in error, that the literal translation is, "shall offer complete war-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ranty." The latter, according to the recent Spanish-English Dictionary published by D. Appleton & Co., New York, 1916, would seem to be closer to a literal translation than any of the others, because the word "garantia" has reference to warranty, guaranty, and security. But, after all, the strict literal meaning would not necessarily be controlling, because, under reasonable interpretation, it would be the sense in which the parties used the word "garantia" in connection with the other words in clause 4 of the contract, and this question would be influenced by the situation of the property, the relations of the parties, and their intentions. It is important, however, to ascertain, through interpretation, or other proper means, whether the parties were making a contract with reference to deeds embodying the usual covenants of warranty, or whether they had in mind that the seller was obligating himself to show a strictly legal chain of title.

It will become necessary to refer again to clause 4 of the contract, and to the meaning of these words as used by the parties to convey intentions and establish obligations in respect to the lands about which the controversy arises.

The case was first tried by jury, and, if we are to accept the statement of counsel, the instructions were to the effect that the title to the land in controversy was good. There was a verdict for $21,080, and judgment thereon. Subsequently, and at the same term, the defendants below moved for a new trial; the principal contention being that the court erred in saying that the title was good, because there were no sufficient proofs to warrant it. Later, in the same term, the verdict and judgment were vacated and a new trial granted. These orders were admittedly general and for a new trial.

On March 5, 1914, and during the term, the plaintiff moved for a reconsideration of the previous order in respect to a new trial, which was not acted upon during the term, but was carried along, if at all, by virtue of a general order entered on the last day:

"That any and all matters not finally determined or settled, and rights which should, or may, be lost by the lapsing of the term, are hereby continued until the next term, to all intents and purposes as if the members and titles of the same were herein set out."

During the next term, and on May 16, 1914, an order was entered granting a motion to reconsider the order for a new trial, and on the same day it was further ordered—indeed, it was a part of the order granting the motion to reconsider—that:

"The order granting a new trial is modified by granting the same upon the condition that said new trial shall be limited to a retrial of titles of the land in question."

On December 15, 1915, the plaintiff moved for a modification of previous orders, to the end that the judgment should be stayed, instead of set aside, until the determination of questions at the present hearing. This motion was denied; the court saying in the course of an opinion, in explanation of such denial, that the previous action of the court setting aside the judgment and the verdict left in the case only the pleadings.

The plaintiffs in error now urge this statement in respect to the pleadings in favor of the proposition that the verdict was set aside generally. That proposition is perfectly correct so far as the original order was concerned, and, although the opinion was filed May 3, 1915, we must accept that observation as having reference to an earlier stage of the proceedings and to the status of the verdict under the general order setting aside the judgment and the verdict, and before the order modifying and limiting the scope of the new trial, because in the same opinion, in its concluding paragraph, Judge Hamilton says:

"My construction of the situation is that the verdict was set aside in part and still remains in force as to everything except the matter of title."

The opinion is otherwise explanatory of the action of the court in connection with the general order and its subsequent modification.

The plaintiffs in error seasonably, broadly, and particularly objected and excepted to the action of the court which involved the modification of the general order, and limited the new trial to that phase of the controversy which related to titles.

The point is taken by the defendants in error that the first assignment is in violation of rule 11 of this court, because it involves distinct propositions. While it may be literally true that the assignment does involve distinct propositions, we do not look with favor upon the point raised, because both propositions are directed against the authority of the court to modify the general order to reinstate the verdict in part and to limit the scope of the new trial to questions relating to title.

[1, 2] We have no doubt of the power of the court to carry along pending motions that they may be taken up and considered in a subsequent term. Nor have we any doubt of the power of a court, while a case and the parties are before it, upon proper hearing, to reconsider, modify, and enlarge its previous orders in respect to a pending controversy. Such power and such authority is so familiar and so well understood that we see no occasion for citing authorities in support of it. The recent Massachusetts case of Simmons v. Fish, 210 Mass. 563, 97 N. E. 102, Ann. Cas. 1912D, 588, contains a careful review of authorities on this subject, and is valuable, not only because of the weight of the reasoning which it contains, but because of the note at page 565 of 210 Mass., 97 N. E. 102, Ann. Cas. 1912D, 588.

While the order limiting the issues of the new trial does not technically express its operation upon other branches of the case involved in the verdict, it is, nevertheless, unquestionable that the court clearly intended to rescind the general order vacating the judgment and the verdict, to restore the original status, and to open for retrial questions of title only, and we think the order should be accepted as sufficient to that end.

[3] Now, as to the propriety of modifying the general order and limiting the scope of the new trial: It is not an unusual thing to order a new trial upon a particular branch of a controversy. It often happens, where a defeated party is aggrieved by the phase of a trial

which had to do with the damages, that the verdict is set aside in that respect and a new trial ordered upon the question of damages only; and it sometimes happens, where the grievance has reference to the primary right—that of recovery—and where there is no substantial controversy as to the question of damages, if the right of recovery is established, that the verdict is set aside upon the question of right of recovery only, and the scope of the trial limited accordingly. The question as to what should be done in a given case under a motion for a new trial, in whole or in part, is always largely a question of discretion. The practice of not going over unnecessary grounds which at the end of the first trial and the verdict are found not to involve substantial dispute, and trying again questions that are not in substantial controversy through the instrumentality of a new trial, granted in the exercise of discretion, is a salutary one, and the authorities and the text-books sufficiently sustain it. The case in this circuit of Farrar v. Wheeler, 145 Fed. 482–490, 75 C. C. A. 386, is among the more recent cases.

In the case at bar the reasonableness of the limitation of the scope of the new trial to questions relating to title, though probably not reviewable here, is made obvious by reference to the motions for the new trial, and the affidavits in their support, because the only substantial grievance urged was that which relates to the state of the evidence in respect to title.

It is quite true that some of the defendants raised the point in their motion for a new trial that, according to the evidence, the plaintiff was entitled to recover as damages the sum of $14,120 only, and not the sum of $21,080, while other defendants did not raise that question at all upon their motion for a new trial. There was nothing in the affidavits in support of the motion showing the ground upon which the point in respect to damages was based. We cannot find from the record that it was much urged before Judge Hamilton as a ground for setting aside the verdict in that respect. The damages, presumably under instructions, were ascertained by the jury, and included in the verdict; and as the verdict in that regard was not opened, and as the record shows neither exceptions to instructions, nor the lines upon which the question of damages was submitted to the jury, we see no way open to us to review any question about that phase of the case.

On December 15, 1914, the parties stipulated that the retrial should be before the court without the intervention of a jury; and on May 3, 1915, which was the same day on which Judge Hamilton handed down his opinion explaining the status of the earlier orders and his reasons for limiting the scope of the trial, the parties stipulated into the retrial before him "such portions of the testimony already taken in this case, at any hearing thereof, as shall have been directed to the issues now under hearing, restricted by former order of this court to the form and sufficiency of the title offered by the plaintiff."

The point is taken by the defendants in error that these stipulations should be treated as a waiver of all questions raised against the or-

ders in respect to the scope of the new trial, but, not accepting this theory, we have considered the questions raised by the record, and as explained in argument, with the result that we see nothing to justify disturbing the orders limiting the issues.

The trial before Judge Hamilton, upon the lines which we have referred to, seems to have occupied several days, and was limited to issues in respect to title, and although the plaintiffs in error, as they claim here, offered evidence for the purpose of sustaining all the issues raised by the pleadings, an examination of the colloquy, at page 105 of the record, which is understood to be the foundation for 12 of the assignments of error, had reference to the boundaries of the land in question, and no reference whatever to any question of damages.

[4] As a result of this hearing, on November 6, 1915, Judge Hamilton handed down an elaborate opinion in which he said, by way of conclusion, that the hearing was restricted to the matter of title, and that full consideration had been given to the subject, and then finally, in conclusion, made a general finding in the words following:

"The court therefore finds the issue of title in favor of the plaintiff, and directs that judgment be entered for the plaintiff on the whole case."

Following this, and three days after the general finding had been made, and after judgment, there were requests for special findings, and upon this subject there were two opinions, with the result that the requests were denied, and, if we understand the case correctly, there were no requests for special findings during the course of the trial or before the general finding and judgment.

The motion for special findings is predicated upon section 649 and section 700 of the Revised Statutes of the United States (Comp. St. 1913, §§ 1587, 1668).

While it is quite likely within the discretion of a court to make special findings after it has rendered a general verdict in a case submitted to it without the intervention of the jury, it is not at all plain that a defeated party is entitled, as of right, to special findings upon requests filed subsequent to the general finding or decision. Section 649 provides that, when a cause is submitted to a court without a jury, the finding upon the facts may be either general or special, and that they shall have the same effect as the verdict of a jury. Section 700, in referring to section 649, provides that the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the Supreme Court upon a writ of error or upon appeal; and that when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment.

[5] The general question with which Judge Hamilton had to deal in respect to title was a mixed question of law and fact, into which there entered considerations with respect to the relations of the parties; the nature and meaning of the contract; instruments, and records bearing upon questions of title; facts of possession; presumptions

resulting from possession; questions whether, as between individuals, title had ripened by virtue of the local statutes of limitation; and various other things. Under such circumstances, we know of no statute, or of any settled practice, which entitles the aggrieved party to demand, as of right, special findings after a case has been submitted upon arguments and determined upon a general finding. It will be seen that under section 700 the right to review has reference to exceptions taken in the progress of a trial of the cause. If we understand the record correctly, there were no requests for special findings during the progress of the trial, nor were there any objections or exceptions directed against the idea of a general finding until after it was made. Under such circumstances, we cannot conceive that there is any question for us to review in respect to the general finding. Company v. Company, 139 U. S. 222, 11 Sup. Ct. 523, 35 L. Ed. 147; Grayson v. Lynch, 163 U. S. 468, 472, 16 Sup. Ct. 1064, 41 L. Ed. 230; St. Louis v. Company, 166 U. S. 388, 17 Sup. Ct. 608, 41 L. Ed. 1044.

We cannot pass this question without observing that the request for special findings, in the form it was, and made as it was, after the cause had been submitted, considered, and decided, was very near the point of impertinency, because the court was asked to make specific findings of fact as to how the plaintiff made out or provided the title. It should be borne in mind that this request was first precipitated after a lengthy opinion giving a full explanation as to how the conclusion was reached. It is perfectly plain that it would neither be reasonable nor orderly for a judge, after he had rendered a general verdict, founded upon considerations which he had explained as its foundation, to enter upon an argument as to how the prevailing party made out or proved his case.

If, at the close of the proofs, the claim of the aggrieved party was that the evidence did not warrant a general finding or a general verdict for the plaintiff upon the question of title, because there was no evidence, or sufficient evidence, to warrant such a finding or such a verdict, a motion or a request that the court should find for the defendants, upon the ground that there was no evidence to warrant a finding or a verdict for the plaintiff, would have been a plain, simple, and adequate remedy, because, in the event of the motion being denied, the aggrieved party might have brought up the entire evidence for review.

There would be no more decorum in asking a judge, after he had explained the case and rendered a general verdict, to make special findings as to how the result was reached than there would be in sending a jury back to the jury room, after rendering a general verdict, to make special findings as to the evidence in support of the verdict. Our conclusion on this branch of the case is that the court was right in not granting a motion for specific findings of fact as to how the plaintiff made out or provided the title.

[6] Now, as to the larger questions which are raised in respect to the contract, the doings of the parties, and the general merits of the

239 F.—51

case; and in approaching their determination we feel bound to say that we have hesitation in doing it on a record so imperfect as the one presented. The troublesome question is that which relates to the meaning of clause 4 of the contract. Did the parties mean title reasonably safe, practically safe, legal title in the ordinary acceptation of the term, a warranty deed in strict legal form supplemented by a strictly legal chain of title running, unbroken, back to the Spanish Crown, or did they mean a deed with the usual covenants of warranty delivered in circumstances, and under conditions, not showing apparent weakness in antecedent's title, or suggesting hidden defects? The question as to what the parties intended must be determined as arising out of an executory contract, and in an action at law for damages because of an alleged breach.

It doubtless would not be seriously contended by any one that under a contract, like the one in question, the issues in respect to the contemplated title would be as strictly drawn, or that the requirements in respect to title would be as exacting, as under an issue in a common-law proceeding, by writ of entry, or of ejectment, where the party having the strict or better title prevails. From the very nature of the transaction, as a preliminary question, the issue of strict legal title could neither be framed nor determined by the parties under the contract in its execution as a business transaction, and it is not to be presumed that they contemplated that, because they provided no forum or other means for the determination of disputed questions as something preliminary to closing the trade; nor could the degree of strictness which might become the standard between adversary parties contesting title be ascertained in a situation like this between contracting parties.

There are three cases which counsel for the plaintiffs in error urged with considerable stress. They are Brown v. Lee, 192 Fed. 817, 113 C. C. A. 141; Washington & Turner v. Ogden, 66 U. S. 450, 17 L. Ed. 203; and Ankeny v. Clark, 148 U. S. 345, 13 Sup. Ct. 617, 37 L. Ed. 475. But, upon examination, it will be found that neither the facts, the issues, nor the principle of these cases are applicable to the situation here. It is true that these cases sustain the general principle that a contract of sale presupposes full title, and that if title fails as to part the buyer may rescind. As a general proposition that is quite true. It is unquestionable that under a contract in general terms to sell and buy, and without any express words as to title, the obligation to furnish full title results through implication of law. But in the case at bar there were express words in respect to title, and they either mean deeds of warranty, and such responsibility and security as go with them, or that the deeds or titles were to be in good condition and safe. In other words, the parties themselves created a standard less than that created by implication under a contract in general terms to sell and buy.

In the case of Ankeny v. Clark, 148 U. S. 345, 13 Sup. Ct. 617, 37 L. Ed. 475, where the general rule is stated, the provisions of the contract were general, the title was defective, and the seller refused to give anything more than a quitclaim deed, and, upon the claim of the

buyer that that was not what the contract called for, rescinded the contract and brought suit to recover for the value of wheat which had been advanced in payment of the purchase money. An issue was framed, and, upon proofs, the court directed a verdict for the plaintiff.

In Brown v. Lee, 192 Fed. 817, 113 C. C. A. 114, the contract was for a warranty deed, with further express words that the lands agreed to be deeded should be free from all rights for sale of timber made to other parties. It appeared that there were incumbrances in respect to timber, as well as other incumbrances. There were issues drawn as to the incumbrances which the seller had expressly agreed to discharge. There was conflicting evidence as to whether the incumbrances really existed, and there were questions as to whether the purchase money should be paid in advance in order that the incumbrances might be discharged. And thus the case upon its facts is plainly distinguishable from the one we are deciding.

In Washington & Turner v. Ogden, 66 U. S. 450, 17 L. Ed. 203, the agreement was general, and the interpretation of such a general provision, without limitation or qualification, would be that the parties intended a perfect title; and, moreover, the purchase was expressly made dependent on the surrender and cancelment of a former agreement of the vendor to sell the same land to another person.

In a situation like the one under consideration, and particularly upon a record like the one before us, there would seem to be no occasion for considering what definite and general rule should govern a trial where a party to a contract seeks to justify abandonment, or renunciation, upon the ground of defective title. Because, as has already been said, considerations of that kind in this case did not, at the time the supposed right was exercised, prompt the action of the parties who are now seeking to justify the rescission upon that ground. It is true there was slight evidence from Mr. Candina that certain private contracts did not suit him; but we do not look upon this single detail as sufficient to overcome the substantial force of the whole weight of causes promoting rescission, as shown by the answers, and by the paragraphs of Judge Hamilton's opinion, which, although, strictly speaking, not special findings of fact, convey the idea that the plaintiff was ready to furnish a good and safe title, or any kind of a title, which he was required to do under the contract, and was prevented from doing it by the action of the defendants in refusing to examine the title, and otherwise to carry out the contract.

The plaintiffs in error also urge certain provisions of the Civil Code of Porto Rico and certain principles of the Civil Law, as explained by Manresa in his commentaries, in respect to sales subject to approval or trial of things sold. They urge these provisions and commentaries in support of their contention in respect to clause 6 of the contract.

It is probable that such provisions and commentaries have reference to a situation in which the party has what he is selling subject to trial, examination, and approval; but, however that may be, the general rules as such have no application to a contract like the one under consideration, because the parties contemplated that one party should go out

and purchase lands, to be turned over to the other party upon conveyances answering the requirements of the express terms of a contract into which they had entered. This being so, the rights of the parties are to be ascertained and determined under an interpretation of the contract, rather than under general provisions of statutes or under general rules of law.

There would be considerable force in what the plaintiffs in error urge, in respect to clause 6, provided the exercise of the supposed right of rescission had been based upon an examination; but apparently they did not resort to the right of examination and approval. If we understand correctly the theory of the answers and the general theory of the findings of Judge Hamilton, the causes of rescission were other than, and independent of, causes based upon examination or weakness in antecedent titles, and the abandonment of the transaction was because the buyers had been informed in an amicable way, by the Secretary of State, of disturbed and revolutionary conditions in the island, and because they had been informed, by qualified counsel, of obstacles militating against personal inspection and examination, and that the lands were not what the seller represented them to be in respect to value and location.

There is nothing in the record that would justify us in disturbing the result reached by Judge Hamilton, upon the ground that the defendants so far sustained their contentions in these respects as to justify abandonment.

From the relations of the parties and the nature of the transaction it would be impossible, under reasonable rules, to interpret clause 4 as meaning that the parties understood that the seller on the day named for closing the deal should be there with a perfect legal chain of title. Such is not the reasonable view. The clause, as contemplated by the parties, undoubtedly had reference to the usual guaranties by a responsible grantor by way of security, and had no reference whatever to the point of a perfect and absolute legal chain of title as a thing preliminary to transferring the land.

We do not look upon the words "ofrescan completa garantia" as meaning an offer of a strictly legal and perfect title, because, according to the translation insisted upon by the plaintiffs in error—a translation which we accept as the correct one—they mean, offer complete warranty. And translating the clause further, in order that the proper connection of these words with the preceding words shall be seen, "El Sr. José Romero binds himself that the title of property should be in good condition and should offer complete security."

In view of the nature of the transaction and the deal the parties were undertaking to make, we do not accept that part of the clause referring to title or deeds "in good condition" as meaning all and singular the antecedent deeds, documents, and records in the various chains of title, but as meaning that the lands were to be conveyed by deeds with covenants of warranty in the usual way in which lands are conveyed by warranty deed. The theory that section 4 had reference simply to the condition of the deeds to be passed from the seller to the buyer

finds very cogent support through the words used in section 7 of the contract, which are "that the total price of the purchase will be delivered on receiving the deeds duly registered."

If clause 4 is interpreted in the sense of a workable executory contract, as must have been contemplated in order that the transaction should be closed, it meant such title deeds of warranty, together with such abstracts and explanations as are usual in the ordinary course of such deals, while, if construed as requiring the seller to be on hand with a perfect chain of title, as something preliminary to closing the deal, it would not be a workable one, because, as already said, there were no apt means provided for determining whether all possible questions and cavils in respect to details and links in the chain of title could be definitely demonstrated one way or the other. If this were to be carried beyond the idea that the buyer had a right to demand, and the seller was bound to exhibit, titles and securities beyond a deed with the usual covenants of warranty, it would be difficult to lay down a rule as to what the measure of title should be. It is enough for us to say that clause 4 is not accepted as meaning that the seller was bound to exhibit in advance, and as a thing preliminary to his deeds, a chain of title which, in all of its links, should be beyond all possible cavil, and it is quite enough to say that the rule laid down by Judge Hamilton, that the contract "requires only that the title be safe," is sufficiently favorable to the plaintiffs in error.

Under such standard of legal requirement, which was sufficiently favorable to the defendants below, Judge Hamilton made a general finding in favor of the plaintiff upon the issue of title which involved mixed questions of law and fact.

But, after all, as will hereafter be seen, all questions under clause 4 which relate solely to the status of the title which Romero obligated himself to transfer are largely moot questions, except as they may bear upon the question of damages; because, if we are to judge the actions of the parties from what appears in the record, the state of the title was not the cogent cause for breaking up the deal.

We see no possible way of reviewing the general finding, upon the record before us, because the record does not contain the evidence, or any substantial part of the evidence, which that court had to weigh in order to reach the finding and decide the case. If, as already said, the plaintiffs in error had in advance of the decision moved for a verdict, or a general finding, and the way was open to them to file a motion to that end, in the event of its being denied they could have brought their case here with the full transcript of the evidence before Judge Hamilton, and in such a situation this court could have determined whether the findings were reasonably supported by the proofs.

Recurring again to the action of the parties, and to what was done in Santo Domingo, when Romero went there for the purpose of carrying out his part of the contract: On this point Judge Hamilton finds—at least we infer that he finds, from the plaintiffs' testimony—that Romero was there, with everything in readiness for conveyances to him, and for his conveyance to the defendants; that the defendants

below introduced no evidence to overcome this; and he further finds that the defendants did not live up to their part of the contract as to execution of deeds, and upon this it was ruled, or found, that they could not "depend on the theory that the plaintiff must do the impossible thing, under the civil law, of registering a deed they prevented him from making."

This again involves findings, if they are findings, which we are in no position to review, because the evidence is not before us. If the plaintiffs in error had expected a review in this respect, they should have made the necessary motions before that court and brought the case here with the evidence for and against, because, under such a condition, this court could determine whether these things should be accepted as findings, and, if so, how far they should be reviewed upon the evidence. The record presents no comprehensive statement in respect to the proofs, and there is nothing before us of substance, aside from what appears in the bill and answer and in the various opinions mixed with law and fact.

The bill, in apt words, does allege that Romero was in readiness to perform his part through executing and delivering the title deeds. The answer denies that, but fails to allege that the state of the title was the reason for not closing the trade. But, looking further, there are statements in the answer in the nature of admissions which are quite persuasive, and quite potential, in the direction of showing that the condition of the titles had nothing whatever to do with the renunciation and abandonment of the deal by the defendants. They say, as a reason for not examining the lands, that the country was in a revolutionary turmoil, which rendered travel unsafe, and that they were advised by the Secretary of State against going where the lands were located; that the lands were not properly located with reference to navigable streams; that they were unfit for cultivation and uses for which they were intended, and in the answer of Penagaricano and Candina that for these reasons the defendants declined and refused to purchase the same. In the general answer it is said by the defendants that they sought and obtained advice of the most expert and best qualified counsel in the capital of the Republic as to the actual situation, and as to the intrinsic and extrinsic value of the property or properties, and that they were informed by experts, who had personal knowledge of the location, and who were acquainted with the condition of the lands, that they were worth only about $8,000, and that they were situated too far away from Samana Bay; that they were unsatisfactory and inappropriate for, and unsuited to, the cultivation of cane, or of any other fruit or product, and that they were unapproachable.

While we are not in a position to review the findings of Judge Hamilton in respect to abandonment, for the reason that all the evidence is not before us, it can be said, and ought to be said, that the answers furnish strong proof that the conditions which prompted the defendants to adopt a course which operated to prevent the consummation of the deal and the delivery of the deeds, were conditions entirely independent of all considerations in respect to the state of the title. The

inquiries in respect to location, accessibility, quality, and value were made prior to the renunciation and abandonment found by Judge Hamilton, and there is no suggestion in the record, so far as we can see, that these parties sought to justify abandonment on the spot and at the time upon the ground of weakness or invalidity of title; and this is a case, if we are to judge the actions from the record, where the parties acting independently of title, were prompted and controlled by considerations in respect to locations, qualities, and values of the land, and where, through an answer, for the first time, and as an afterthought, they sought to attack the title, something which did not bear upon renunciation or abandonment at all.

It follows, of course—if the legal standard of title held by Judge Hamilton was sufficiently favorable to the defendants below, a view which we have sustained—from the general finding in favor of the plaintiff upon the issue of title, which involved considerations of mixed questions of law and fact, a finding which we cannot review upon this record, and there being no question of damages here, that the judgment will have to be sustained, unless there are errors in respect to the admissibility of evidence which should set the verdict aside.

We do not deem it necessary to examine categorically all the assignments based upon the admissibility of evidence. They are, generally speaking, of the same character. They are mostly technical, and none of sufficient substance in a trial like this to involve reversible error.

[7] It is not unusual, especially in a trial before a court without a jury, and particularly in cases which involve directly, or collaterally, questions as to titles to real estate, to admit documentary and oral proofs de bene, upon the theory—and in practice a theory of necessity—that if disconnected de bene documents, or instruments, or other disconnected proofs, in respect to links in the chain of title, are not connected, that they are not evidence at all, and become wholly irrelevant and altogether harmless. It is quite apparent that this was the theory which governed in the trial before Judge Hamilton. This is explained in his opinion in various places.

As has been observed, it is not an unusual thing—indeed, it is quite the common thing—in modern practice (where the purpose is to sustain titles of land, and where it must be done step by step, and by steps to be taken in order of time, and sometimes out of order of time under discretion), to admit documents bearing directly or collaterally upon the chain of alleged title, with the understanding, expressed or implied, that if they are connected they will become competent and material, and will be considered, and if not connected, that they become wholly immaterial and harmless. This rule results from necessity, and is a rule particularly and peculiarly adapted to investigations in respect to real estate titles. Under the circumstances, we see nothing in the assignments against the admissibility of evidence to justify disturbing the general finding of the court below.

The indefinite and unusual terms of the contract in this case, the peculiar circumstances of renunciation, and the fact that this is an action to recover damages for an alleged breach of an executory con-

tract, rather than an action to test title upon issues drawn to that end, taken altogether, present a situation so far sui generis as to make the task of finding authority directly in point, or broadly applicable, an impossible one. But we do not perceive that Judge Hamilton's decision offends any standard rule of either the common or civil law. It was the theory of the trial that the plaintiff below, in order to lay a foundation for damages, must show that he was in a position to furnish title sufficient to answer the requirements of clause 4, read in connection with clause 7 of the contract as interpreted and construed by the presiding judge, and in the circumstances of the record the general finding to that end must be accepted as a determination of that question in favor of the plaintiff.

It is evident that the court below deemed the proofs sufficient to establish such a condition of title, in fact, as the contract contemplated and required, and if that court's theory in that respect is to stand, together with its theory as to the fact of a breach, we see no way to reverse the result reached, that the plaintiff was entitled to recover damages; and as there is before us no proper question as to the measure of damages, and no question in respect to damages other than that raised against the action of the District Court in holding the verdict in part and limiting the scope of the trial, we see no justifiable ground for interference with the verdict for damages.

The judgment of the District Court is affirmed, with costs of this court.