ORIGINAL SIXTEEN TO ONE MINE, Inc., v. TWENTY-ONE MINING CO.
(two cases).

(District Court, N. D. California, S. D.  March 2, 1918.)

Nos. 292–E, 16001–L.

1. TRIAL ⊕⇒340(1)—VERDICT—CORRECTION BY COURT.
    A federal court cannot look to the testimony for the purpose of correcting a faulty verdict, even though there is no dispute over the facts.

2. NEW TRIAL ⊕⇒9—DEFECTIVE VERDICT—NEW TRIAL AS TO SINGLE ISSUE.
    A federal court has power to grant a new trial as to a single issue in the case, and such procedure is proper, where the jury has found generally for plaintiff, but failed to find his damages, although shown by undisputed evidence.

3. MINES AND MINERALS ⊕⇒81(3)—MINING CLAIMS—RIGHT TO FOLLOW VEIN—CONTINUITY OF VEIN.
    A segment of an ore vein, commencing 15 or more feet below where the vein apexing in complainant's claim terminated in a fault, held a continuation of the same vein, which complainant was entitled to follow in its dip through the side lines into defendant's adjoining claim.

At Law and in Equity.  Action and suit by the Original Sixteen to One Mine, Incorporated, against the Twenty-One Mining Com-

pany.  New trial granted in law action as to one issue.  Decree for complainant in equity suit.

See, also, 153 C. C. A. 142, 240 Fed. 106.

William E. Colby, Grant H. Smith, and John S. Partridge, all of San Francisco, Cal., for plaintiff.

Frank R. Wehe and Bert Schlesinger, both of San Francisco, Cal., and Lynden Bowring, of Los Angeles, Cal., for defendant.

RUDKIN, District Judge.  The plaintiff in the law action is the owner and in the possession of the Sixteen to One quartz mine or lode mining claim in the Alleghany mining district in the state of California.  The defendant is the owner and in the possession of the Belmont, Valentine and Tightner extension mining claims, adjoining the Sixteen to One claim on the east.  The complaint alleges that there exists within the Sixteen to One claim a lode or vein of rock in place, carrying gold and other valuable minerals; that such vein on its strike or course traverses the claim from end to end; that the top or apex of the vein lies wholly within the side lines of the claim; that on its downward course or dip the vein departs from the perpendicular and passes out through the easterly side line of the claim into and beneath the surface of the adjoining claims owned by the defendant, and into and beneath the surface of another claim owned by third persons, who are not parties to the action.  The complaint then avers that the defendant entered upon this vein between planes drawn vertically downward through the end lines of the Sixteen to One claim, and removed ore therefrom of a value in excess of $100,-000, for which sum the plaintiff demands judgment.

The answer in effect denies the title of the plaintiff, and by cross-complaint the defendant asserts title in itself, and avers that the plaintiff removed ore from the vein to the value of $125,000, for which sum it demands judgment.

The issues thus presented were tried before a jury.  All testimony offered at the trial related to the title or ownership of the vein under the extralateral right statute, aside from a brief statement furnished by each of the parties showing the amount of gold extracted from the vein and the cost of mining, transporting, and reducing the ore.  The charge of the court on the question of title or ownership was not excepted to by either party, and there is no claim of error in that regard at this time.  On the question of measure of damages the court instructed the jury as follows:

"If the plaintiff is entitled to recover, the measure of damages will depend upon the nature of the trespass.  If the trespass was a willful one, that is, if the ore was taken recklessly, willfully, or intentionally by the defendant, or by any person under contract with the defendant, then the plaintiff is entitled to recover the full value of the ore, without deduction for the labor performed by the trespasser."

"If, on the other hand, you find that the trespass was the result of inadvertence or mistake, the value of the property when first taken must govern, or if the conversion sued for was after value had been added to it by the work of the trespasser, he should be credited with this addition."

Again:

"The measure of damages, as I have said, as against a willful trespasser, is the full value of the ore taken; whereas, if the trespass is an innocent one, the measure of damages is the value of the ore in place, or the value of the ore after its removal less the actual cost of mining, transporting, and reducing the ore."

Under these instructions the jury returned the following verdict:

"We, the jury, find in favor of the plaintiff, and assess the damages against the defendant in the sum of $100,000, less cost of extraction of the ore, on account of unwillful trespass."

The plaintiff has interposed a motion for a judgment on this verdict, either in the sum of $100,000, or for the sum of $100,000 less the sum of $46,315.58. It might be stated in this connection that this latter sum is claimed to be the cost of mining, transporting, and reducing the ore, as disclosed by the statement furnished by the defendant. The defendant, on the other hand, has moved to set aside the verdict and for a new trial, on the ground that the verdict is indefinite, uncertain, and void.

[1] It is manifest that the plaintiff is not entitled to a judgment on the verdict for the sum of $100,000. The complaint alleged that the trespass was a willful one, and prayed damages in the sum of $100,000 on that basis. The jury found that the trespass was not willful, and therefore, under the charge of the court, there should have been deducted from the amount found by the jury the cost of mining, transporting, and reducing the ore. Nor, in my opinion, can the court deduct from the amount of the verdict the cost of mining, transporting, and reducing the ore, albeit such cost be shown by the admitted facts in the case. In other words, it seems that a federal court cannot look to the testimony for the purpose of correcting a faulty verdict, even though there is no dispute over the facts.

In Hodges v. Easton, 106 U. S. 408, 1 Sup. Ct. 307, 27 L. Ed. 169, the facts were as follows:

"The record states that the jury, impaneled and sworn to try the issues, 'rendered a special verdict in answer to the questions propounded by the court.' The questions so propounded, with the answers thereto, were made the special verdict. The jury having been discharged, the plaintiffs, by counsel, moved for judgment upon the special verdict for the value of the wheat wrongfully converted by defendants, or for such damages as the court should adjudge, and for such other and further relief as might be granted in the premises. On a later day the defendants moved to set aside the special verdict and grant a new trial, upon the ground, among others, that the special verdict 'does not contain findings upon the material issues in the case.' These motions were heard together, and it was ordered by the court 'that the motion of defendants for a new trial be, and is hereby, overruled, and that the motion of the plaintiffs for judgment upon the special verdict of the jury, and facts conceded or not disputed upon the trial, be, and is hereby, granted.' The damages were assessed by the court at $12,554.89, for which sum judgment was entered against the defendants."

In reversing the judgment thus entered, Judge Harlan, speaking for the Supreme Court, said:

"It is not necessary, in this opinion, to enter upon an examination of those decisions, or to consider how far the local law controls in determining either

the essential requisites of a special verdict in the courts of the United States, or the conditions under which a judgment will be presumed to have been supported by facts other than those set out in a special verdict. The difficulty we have arises from other considerations. The record discloses that the jury determined a part of the facts, while other facts, upon which the final judgment was rested, were found by the court to have been conceded or not disputed. If we should presume that there were no material facts considered by the court beyond those found in the answers to special questions, then, as we have seen, the facts found do not authorize the judgment. If, on the other hand, we should adjudge it to have been defendants' duty to preserve the evidence in a bill of exceptions, and that, in deference to the decisions of the state court, it should be presumed that the 'facts conceded or not disputed at the trial' were, in connection with the facts ascertained by the jury, ample to support the judgment, we then have a case at law, which the jury were sworn to try, determined, as to certain material facts, by the court alone, without a waiver of jury trial as to such facts. It was the province of the jury to pass upon the issues of fact, and the right of the defendants to have this done was secured by the Constitution of the United States. They might have waived that right, but it could not be taken away by the court. Upon the trial, if all the facts essential to a recovery were undisputed, or if they so conclusively established the cause of action as to have authorized the withdrawal of the case altogether from the jury, by a peremptory instruction to find for plaintiffs, it would still have been necessary that the jury make its verdict, albeit in conformity with the order of the court. The court could not, consistently with the constitutional right of trial by jury, submit a part of the facts to the jury, and itself determine the remainder without a waiver by the defendants of a verdict by the jury."

See, also, Slocum v. New York Life Insurance Co., 228 U. S. 371, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

[2] If the jury finds in favor of the plaintiff, and there is no dispute over the amount of the recovery, it seems somewhat technical to deny to the court the power to supply the omission from the undisputed facts, but such seems to be the law of the land. It does not follow from this, however, that a new trial must be granted as to every issue in the case. There was no uncertainty in the verdict, in so far as the jury found for the plaintiff, thus establishing its title to the vein and its right to damages. I see no reason why that issue should be submitted to another jury, with little likelihood that a different result would be obtained. The power of a court to grant a new trial as to a single issue in a case is well settled in the state of California and in the federal courts. San Diego Land, etc., Co. v. Neale, 78 Cal. 63, 20 Pac. 372, 3 L. R. A. 83; Duff v. Duff, 101 Cal. 1, 35 Pac. 437; Estate of Everts, 163 Cal. 449, 125 Pac. 1058; Calaf v. Fernandez, 239 Fed. 795, 152 C. C. A. 581.

This case, in my opinion, peculiarly calls for the exercise of the discretion of the court in awarding a new trial as to the single issue only. It was through mere inadvertence on the part of the jury that the case was not finally and forever disposed of at the last trial. There was at no time a substantial controversy over the amount of the recovery, and for reasons not disclosed by the record the plaintiff does not seem to be at all concerned as to the amount of the judgment for damages. Possibly the defendant is so far insolvent as to render the judgment for damages of no avail, if it loses the mine in controversy; but, whatever the reason, it would not be in the interest of justice or the exercise of a wholesome discretion to try the case over

again in its entirety. The verdict will therefore be permitted to stand, in so far as it finds the issues in favor of the plaintiff, and a new trial will be awarded for the sole and only purpose of assessing the amount of the recovery.

[3] The same state of facts is presented in the equity case. The relief sought is a decree quieting title in the plaintiff and awarding an injunction against the commission of further trespasses by the defendant. At the commencement of the trial of the law action it was stipulated that the equity case should be considered by the court on the testimony offered in the law action and such further testimony as the parties might present. Some further testimony has been offered, and in addition the defendant has requested the court to appoint some disinterested mining engineer or engineers to examine the mines and the mine workings and report to the court. On the trial of the law action a vast amount of expert testimony was offered by the plaintiff, tending to show the identity of the vein from the outcroppings or apex on the surface of the Sixteen to One claim down through the various workings, and perhaps an equal amount of testimony was offered by the defendant tending to show the contrary. The experts on each side consisted of geologists, mining engineers, and practical mining men. It is almost needless to say that the opinions of these experts were positive and unequivocal in favor of the party who called them, and little would be accomplished by adding one or more additional experts to the long list already in the record. It was conceded throughout the trial that there is a vein on the Sixteen to One claim; that this vein dips in an easterly direction at an angle of 45 or 50 degrees; that the vein terminates at a fault at about the 200-foot level; and that by dropping down a distance of 15 or 20 feet at the shaft, and a distance of 35 or 40 feet at the northerly boundary of the claim, another vein is picked up, likewise terminating at a fault. The witnesses for the plaintiff testified that these two segments were one and the same vein, while the witnesses for the defendant testified to the contrary. Their theory is that, while there are two segments of veins there, the upper segment of the lower vein was thrown up several hundred feet above the present surface of the mountain and has eroded away, while the lower segment of the upper vein can probably be found several hundred feet lower down. The jury found it much easier to join the two existing segments together, thus making a single vein, than to speculate as to what has become of the two lost segments, and with that conclusion I am in full accord.

A decree will therefore be entered in favor of the plaintiff in accordance with the prayer of the bill.